[No. 35560. *En Banc.* February 1, 1962.]

THE STATE OF WASHINGTON, *on the Relation of Robert H. Bond, Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.**

*Corbett, Siderius & Lonergan,* for appellant.

*The Attorney General* and *S. Fred Bruhn, Assistant,* for respondents.

* Reported in 368 P. (2d) 676.

HILL, J.—QUAERE: Does an action for restoration to position by a state employee—entitled to a veteran's preference in public employment (RCW 73.16.010), who was discharged without cause and replaced by a nonveteran—come within the two-year "catch-all" (RCW 4.16.130) or the three-year (RCW 4.16.080(2)) statute of limitations?

ANSWER: The three-year statute.

BACKGROUND DISCUSSION: A veteran's preference in public employment was unknown at common law. It first came into our state statutes for the benefit of "honorably discharged union soldiers and sailors" (Laws of 1895, chapter 84, p. 166), and was extended to give similar rights to honorably discharged soldiers and sailors of the Spanish-American War and the Philippine Insurrection (Laws of 1915, chapter 129, p. 356). No such delay was encountered after World War I in extending the preference to honorably discharged soldiers and sailors "of the war with Germany and her allies"; and, at that time, "widows" of veterans became entitled to the same preference (Laws of 1919, chapter 26, p. 54). While World War II was still in progress the act was again extended to cover honorably discharged soldiers and sailors (and their widows) "of the existing war with Germany, Italy and Japan and their allies." (Laws of 1943, chapter 141, p. 436)

Under none of these acts did the veteran have any means of enforcing the preference (*State ex rel. Breslin v. Todd* (1941), 8 Wn. (2d) 482, 113 P. (2d) 315), although an official who failed to comply with the act "in letter and in spirit" was, and is, guilty of a misdemeanor punishable by a fine of not less than five dollars and not more than twenty-five dollars (RCW 73.16.020).

By Laws of 1951, chapter 29, p. 59, all reference to specific wars was deleted, and the statute was changed to read:

"In every public department, and upon all public works of the state, and of any county thereof, honorably discharged soldiers, sailors, and marines who are veterans of any war of the United States, or of any military campaign for which a campaign ribbon shall have been awarded,

and their widows, shall be preferred for appointment and employment. Age, loss of limb, or other physical impairment, which does not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the capacity necessary to discharge the duties of the position involved. [1951 c 29 § 1; 1943 c 141 § 1; 1919 c 26 § 1; 1915 c 129 § 1; 1895 c 84 § 1; Rem. Supp. 1943 § 10753.]" RCW 73.16.010.

"Any veteran entitled to the benefits of RCW 73.16.010 may enforce his rights hereunder by civil action in the courts. [1951 c 29 § 2.]" RCW 73.16.015

Two cases, under this statute, have reached this court: *State ex rel. Ford v. King Cy.* (1955), 47 Wn. (2d) 911, 290 P. (2d) 465; and *State ex rel. Day v. King Cy.* (1957), 50 Wn. (2d) 427, 312 P. (2d) 637. Neither of these cases raised the issue now before us as to the applicable statute of limitations.

The three-year statute (RCW 4.16.080(2)), relied upon by the relator-appellant, is applicable to: "An action . . . for any other injury to the person or rights of another not hereinafter enumerated."

The respondents urge that this is an action on a liability created by a statute, and that our cases hold that the two-year "catch-all" statute is the only one applicable to an action of this sort. It provides that:

"An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued." RCW 4.16.130.

The trial court was of the opinion that the latter was the applicable statute and dismissed the action by which the relator sought restoration to a position as safety inspector for the Department of Labor and Industries, from which he had been discharged almost thirty-four months before, the position having been filled by a nonveteran.

REASONS FOR ANSWER TO QUAERE: We must, at the outset, make it clear that no question is raised as to the application of either of these statutes of limitation to a mandamus action.

The veteran brings this action in mandamus to

compel his reinstatement in the position from which he claims to have been removed in violation of his preference rights. We have recognized that mandamus is a proper remedy. *State ex rel. Ford v. King Cy., supra; State ex rel. Day v. King Cy., supra; Luellen v. Aberdeen* (1944), 20 Wn. (2d) 594, 148 P. (2d) 849.

In this state, mandamus is one of the forms of procedure provided by statute (RCW 7.16.150 through 7.16.280) for the enforcement of rights and the redress of wrongs, and "has in it all the elements of a civil action." *Luellen v. Aberdeen, supra; Washington Security Co. v. State* (1941), 9 Wn. (2d) 197, 114 P. (2d) 965, 135 A. L. R. 1330; *State ex rel. Hunt v. Okanogan Cy.* (1929), 153 Wash. 399, 280 Pac. 31, 67 A. L. R. 668; *State ex rel. Brown v. McQuade* (1905), 36 Wash. 579, 79 Pac. 207; *State ex rel. Race v. Cranney* (1902), 30 Wash. 594, 71 Pac. 50.

We are not, at the moment, concerned with any question of a monetary recovery for back pay or liability therefor, but with the enforcement, by reinstatement, of a preferential right to employment granted by statute to the relator.

The respondents disregarded that right when they discharged the relator without cause and replaced him with a nonveteran. When a legally protected interest or right is invaded or violated such action constitutes an injury thereto within the purview of RCW 4.16.080(2), the three-year statute of limitations hereinbefore quoted. *Luellen v. Aberdeen, supra.*

The relator's rights under the statute, in this case, are comparable to the statutory right of action given for violation of civil rights by a federal statute. The Kansas statute of limitations held to be applicable, in such a case, is that section which relates to an " 'action for injury to the rights of another, not arising on contract.' " *Wilson v. Hinman*, 172 F. (2d) 914, 915 (C.A. Kan. 1949).

The respondents' discussion of an action for a liability created by a statute is beside the point. The "catch-all" statute of limitations, relied upon by respondents, applies,

by its terms, only to actions for relief "not hereinbefore provided for." If, as we hold, this mandamus action by a veteran is for relief to an injury to his right of preferential employment, the "catch-all" statute has no application.

ANALYSIS OF RESPONDENTS' AUTHORITIES: Since our answer to the *Quaere* involves a setting aside of the trial court's order of dismissal, and since the trial court relied upon the authorities cited by the respondents, we will make clear why we deem them inapplicable to the present situation.

■ All of the discussion about "a liability created by a statute," is a red herring. We do not have a statute of limitations, as many states do, specifically applicable to an action for a liability created by a statute.

The phrase "liability created by a statute" came into our cases dealing with statute-of-limitation questions by reason of the contention, made in numerous cases, that a cause of action predicated on a statute came under a three-year statute of limitations applicable to actions on "a contract or liability, express or implied, which is not in writing." (Now, RCW 4.16.080(3))

Our cases quite properly held that the word "liability," in that statute, referred neither to a tort liability nor to a liability created by a statute, but only to a contractual liability. *Northern Grain & Warehouse Co. v. Holst* (1917), 95 Wash. 312, 163 Pac. 775; *Robinson v. Lewis Cy.* (1927), 141 Wash. 642, 252 Pac. 143; *Constable v. Duke* (1927), 144 Wash. 263, 257 Pac. 637; *Noble v. Martin* (1937), 191 Wash. 39, 70 P. (2d) 1064; *Cannon v. Miller* (1945), 22 Wn. (2d) 227, 155 P. (2d) 500, 157 A. L. R. 530; and *Heitfeld v. Benevolent & Protective Order of Keglers* (1950), 36 Wn. (2d) 685, 220 P. (2d) 655, 18 A. L. R. (2d) 983. See, however, *Pierce Cy. v. Newman* (1946), 26 Wn. (2d), 63, 173 P. (2d) 127.

These (except *Pierce Cy. v. Newman, supra*) are cases relied upon by the respondents, and so far as our present problem is concerned, they hold no more than that that particular section of the statute of limitations (RCW

4.16.080(3)) applied only to contractual liabilities and not to liabilities created by a statute.

That does not mean, and here is the fallacy of the respondents position, that, therefore, an action on a liability created by a statute falls within the two-year "catch-all" statute of limitations. RCW 4.16.130. It may or it may not. We reiterate that there is no such category as "an action on a liability created by a statute" in our limitation statutes. Such an action does not fall within the "catch-all" statute unless there is no other statute of limitations applicable thereto, *i.e.*, it is "an action for relief not hereinbefore provided for."

Examples of actions which are created by statute, to which the "catch-all" statute of limitations has never been applied, are Wrongful Death Act and Factory Act cases: *Cook v. Clallam Cy.* (1947), 27 Wn. (2d) 793, 180 P. (2d) 573; *Calhoun v. Washington Veneer Co.* (1932), 170 Wash. 152, 15 P. (2d) 943; *Dodson v. Continental Can Co.* (1930), 159 Wash. 589, 294 Pac. 265; *Robinson v. Baltimore & S. M. & R. Co.* (1901), 26 Wash. 484, 67 Pac. 274.

The fallacy of the respondents' position is further made clear by their own cases, in which, while the ultimate conclusion is that the "catch-all" statute is applicable in each case, the court did not arrive at that conclusion simply because it was an action on a liability created by statute, but because no other cited provision of the statute of limitations was applicable thereto. Thus in *Cannon v. Miller, supra,* an action to recover wages and damages under the Fair Labor Standards Act, it was said (p. 240):

"If the action is not governed by either of the two subdivisions 3 and 6 of § 159 [now RCW 4.16.080(3) and (6)], then concededly it is controlled by § 165 [now RCW 4.16.130, the catch-all statute]."

Actually, the only two cases cited by respondents which are relevant to the present inquiry of whether this is an action for an injury to the rights of another, are:

(1) *Northern Grain & Warehouse Co. v. Holst* (1917), 95 Wash. 312, 163 Pac. 775. This was an action for damages against the three members of the public service commission

and the chief inspector of the state grain department (and their surety company), because "carelessly, knowingly and negligently" they had licensed one Nichols to operate grain warehouses without obtaining the bond required by statute. The plaintiff had placed grain in the warehouses operated by Nichols, and when demand was made for the grain called for by its warehouse receipts, there was none available, and there was no bond to which it might have recourse.

We were concerned, in that case, with whether the action came within the three-year statute of limitations, because it was an action upon (a) "any other injury to the person or rights of another"; or (b) "a contract or liability, express or implied, which is not in writing." It was conceded that if the action did not come under (a) or (b), that the two-year "catch-all" limitation applied; (b) was disposed of by holding that the liability referred to therein was a contractual liability and not a liability growing out of a negligent act or the violation of a statutory requirement. The court held that (with reference to (a)) no cause of action arose until a plaintiff's personal or property rights had been invaded, and that there was no direct act of the officials injuring the plaintiffs. The court said (p. 319):

" . . . It was the failure of Nichols to either deliver the wheat or pay its value that directly caused appellant's loss, a loss which it might have recouped itself for by an action upon the bond, had respondent officials exacted one. But the failure to give a bond was not the cause of Nichols' inability to respond to appellant's demand, and hence, while appellant might have ultimately recompensed itself from the bond given, it was not the failure to give a bond that directly occasioned its loss. The direct cause of appellant's loss was the default of Nichols and not the default of respondents."

The conduct of the public officials in the *Northern Grain & Warehouse Co.* case cannot be compared with the direct invasion of the relator's personal right to preferential employment by the respondents in the present case.

(2) *Noble v. Martin* (1937), 191 Wash. 39, 70 P. (2d) 1064. This was an action to enforce the individual liability

of officers of an insolvent bank who knowingly permitted it to accept deposits after insolvency. Liability was predicated upon the provisions of Art. 12, § 12, of the state constitution.

The court, in that case, dismissed as "untenable" the suggestion that it was an action for "injury to the person or rights of another," under what is now RCW 4.16.080(2), saying that it had been held in *Northern Grain & Warehouse Co. v. Holst, supra,* "that this statutory subdivision applies only to certain direct invasions of personal or property rights."

We can agree that there was no direct invasion of the plaintiff's personal or property rights in either the *Northern Grain & Warehouse Co.* case, or in *Noble v. Martin, supra*; but what can be a more direct invasion of a personal right than to deprive a person of the preference right to employment given to him by statute.

There is no case cited by the respondents that is inconsistent with, or opposed to, our holding that to deprive the relator of his preferential right to public employment constitutes an injury to that right within the purview of RCW 4.16.080(2), the three-year statute of limitations.

DISPOSITION OF THE CASE: Our conclusion that the three-year statute of limitations is applicable to the mandamus action for reinstatement by the relator, makes it necessary to set aside the order of dismissal, which was based on the applicability of the two-year statute of limitations. That order will be set aside; and the cause is remanded to the superior court for the purpose of determining the merits of the affirmative defense of laches; and, if the action is not barred by laches, to determine the relief to which the relator is entitled.

FINLEY, C. J., DONWORTH, WEAVER, OTT, and FOSTER, JJ., concur.

ROSELLINI, J. (dissenting)—The appellant by this action is requesting reinstatement to the position of safety inspector for the Department of Labor and Industries, and the sum of $451 per month for each and every month from

February 28, 1957, to the present time, plus sick leave and vacation time. The claim in wages is in excess of $15,000.

The veterans' preference act was first enacted by Laws of 1895, chapter 84, § 1, p. 166, and with minor amendments has been continuously in effect since that time.

In *State ex rel. Breslin v. Todd*, 8 Wn. (2d) 482, 113 P. (2d) 315, we held that since the statute made a violation a misdemeanor on the part of the official involved, such criminal action was the exclusive remedy.

In 1951, the legislature added a new section (RCW 73.16.015) which provides: "Any veteran entitled to the benefits of RCW 73.16.010 may enforce his rights hereunder by civil action in the courts."

Prior to 1951, the veterans' preference act imposed no civil liability upon the employer which could be enforced by the veteran in the courts of this state. This liability was created by the 1951 enactment, and this is the only liability upon which a cause of action can be based.

This court in an en banc hearing, *Noble v. Martin*, 191 Wash. 39, 70 P. (2d) 1064, held, after an extensive analysis of the question, that the two-year statute of limitations applied in an action brought upon a liability created by statute. Referring to *Douglas Cy. v. Grant Cy.*, 98 Wash. 355, 167 Pac. 928, the court said at page 62:

"This decision, the decisions therein cited, and the still later decision in *Robinson v. Lewis County*, 141 Wash. 642, 252 Pac. 143, 256 Pac. 503, *firmly establish the rule in this state that, under our system of limitations, actions to enforce a liability created by statute, other than actions for penalties or forfeitures, fall within Rem. Rev. Stat., § 165* [RCW 4.16.130]. *This construction has been given to our limitation statutes,* and our decisions relating thereto by other courts, including the supreme court of the United States." (Italics mine.)

The rule has been applied in the following cases: *Cannon v. Miller*, 22 Wn. (2d) 227, 155 P. (2d) 500, 157 A. L. R. 530 (liability imposed upon employers for overtime pay, under the fair labor standards act); *McClaine v. Rankin*, 197 U. S. 154, 49 L. Ed. 702, 25 S. Ct. 410 ("superadded" liability

imposed by statute upon national bank shareholders upon insolvency of the bank); *Robinson v. Lewis Cy.,* 141 Wash. 642, 252 Pac. 143, 256 Pac. 503 (statutory liability imposed upon municipal officials for failure to take a contractor's bond); *Douglas Cy. v. Grant Cy., supra* (special act making Grant County liable for Douglas County obligations); and *Heitfeld v. Benevolent & Protective Order of Keglers,* 36 Wn. (2d) 685, 220 P. (2d) 655, 18 A. L. R. (2d) 983 (statutory liability imposed upon dealers, winners, and gambling proprietors for amounts lost).

In the case in which this rule of law had its most recent pronouncement by the court (*Heitfeld v. Benevolent & Protective Order of Keglers, supra*), the court simply said:

"This is an action upon a liability created by statute and falls within Rem. Rev. Stat., § 165 . . . [RCW 4.16.130] which reads as follows: 'An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued.'

"The decision in *Noble v. Martin, supra,* . . . is conclusive on this issue."

The facts of *Cannon v. Miller, supra,* show that it is directly in point. The respondents there had been deprived of wages and overtime compensation which were recoverable by them, together with liquidated damages and attorney's fees, under the provisions of the fair labor standards act of 1938 (52 Stat. 1060-1069; 29 U.S.C.A. §§ 201-217). On these facts, the theory of the majority— that there was a direct invasion of the employee's personal or property rights—could have been, but was not, argued. However, the language which Judge Steinert, speaking for the full court, used in reaching the decision leaves no doubt as to what would have happened to the theory had it been urged:

"The phrase 'liability created by statute' means a liability which would not exist but for the statute. . . . [p. 241]

"It seems plain that, except for the provisions of the fair labor standards act, appellants would be under no obligation *whatever* to pay overtime compensation, liquidated damages, or attorney's fees. . . . [p. 242]

" . . . we are of the opinion that respondents' claims

are to be classed as liabilities created by statute, for in the absence of the statute there would be no obligation at all upon the appellants to pay overtime compensation, liquidated damages, or attorney's fees as therein prescribed." (p. 248) (Italics mine.)

The same is true of the "veterans' preference act." Without it, the employer would have been under no obligation to give preference in employment to the relator. Consequently, the liability is one created by statute, and the well-settled rule is that the two-year statute applies.

If this were a case of first impression, it might be justifiably said that "a liability created by statute" is as much "an action . . . for any other injury to the person or rights of another not hereinafter enumerated" (RCW 4.16.080 (2)) as it is "an action for relief not hereinbefore provided for." (RCW 4.16.130)

But the statute has been construed by this court and the interpretation has become well settled that a liability created by statute falls within the latter category. The majority, by distorting the holdings of the cases recognizing and following this interpretation, has managed to conclude that it never existed. I am reminded of *Alice in Wonderland*:

"When I use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean— neither more nor less."

"The question is," said Alice, "whether you can make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

I would affirm.

HUNTER, J., concurs in the result of the dissent.