559 F.2d 1142
 Jack SHOUSE, David Romer, E. A. Baxendale, and Alice M.
Baxendale, Plaintiffs-Appellants.
v.
PIERCE COUNTY, a political subdivision of the State of
Washington, Clay Huntington, Patrick J. Gallagher,
and George P. Sheridan, County
Commissioners, Defendants-Appellees.
 No. 76-2790.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 25, 1977.
 
 Richard B. Sanders, Seattle, Wash., argued for plaintiffs-appellants.
 Mark L. Bubenik, Deputy Pros. Atty., Pierce County, Edwin Wheeler, Associate Counsel, argued, Tacoma, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington at Tacoma.
 Before HUFSTEDLER and TRASK, Circuit Judges, and BURNS,* District Judge.
 PER CURIAM:
 
 
 1
 The appellants brought this civil rights action (42 U.S.C. § 1983) to challenge the constitutional validity of the formation of a Utility Local Improvement District ("Utility District"), created to provide a municipal sewer system, on the ground that the state statute, pursuant to which the Utility District was formed (R.C.W. 36.94.240), violated the Equal Protection Clause of the Fourteenth Amendments. The appellants sought to enjoin the appellees from financing and constructing the proposed sewer system. The case was initially heard by a three-judge district court. That court dismissed the action on the grounds that it was barred by limitations and laches, but commented that if it were to reach the merits, it would decide against appellants on the authority of Field v. Barber Asphalt Paving Co. (1905) 194 U.S. 618, 24 S.Ct. 784, 48 L.Ed. 1142 and Salyer Land Co. v. Tulare Lake Basin Water Storage District (1973) 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659.
 
 
 2
 The appellants appealed to the Supreme Court. By Memorandum Order dated April 19, 1976, the Supreme Court vacated the district court's dismissal "with directions to enter a fresh Decree from which a timely appeal may be taken to
 
 
 3
 United States Court of Appeals for the Ninth Circuit."[1] The three-judge district court thereafter filed a decree of dismissal in which it incorporated its opinion earlier filed, designating that opinion as its findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure. This appeal followed.
 
 
 4
 * The Board of Commissioners of Pierce County, State of Washington, proposed a resolution to form a Utility District for three unincorporated communities within the County to construct sewers for those communities. The resolution was formally adopted on June 18, 1973. The appellants filed this action on September 5, 1973. The appellants are tenants and small landowners who own property and/or reside within Pierce County; all of the appellants are registered voters within the County. The challenged Utility District was created pursuant to authority delegated to county governments by Chapter 36.94.240, Revised Code of Washington.[2] On April 30, 1973, the Board declared its intention to form the challenged Utility District and directed that a public hearing upon that action be conducted before the Board on May 30, 1973. The Board informed the property owners of the proposal by a direct mail notice of the hearing. Accompanying each notice was a statement estimating the increase in assessments of the particular property if the sewer project were approved. The estimated assessments were based upon factors, among others, of area, frontage, and "equivalent capacity" charges, as well as the number of residential or commercial units on the property.
 
 
 5
 After the hearing, the Board unanimously adopted the resolution forming the Utility District. The Washington statute, which underpins the resolution, provides in part:
 
 
 6
 "(T)he jurisdiction of the commissioners to proceed with any improvement initiated by resolution shall be divested by protests filed with the clerk of the board prior to said public hearing signed by the owners, according to the records of the county auditor, of at least forty percent of the area of the land within the proposed local district." (R.C.W. 36.94.240.)
 
 
 7
 Real property owners to whom the notices were sent were supplied with protest forms and told that those forms could be filed with the Clerk of the Board by return mail. Within the time allotted by statute, about 22 percent of the landowners whose property was subject to assessment filed protests.
 
 
 8
 The appellants other than Shouse, a small landowner, did not file protests because they were not permitted any protest vote. Shouse was not totally disenfranchised in respect of the protest, but he claims that his voting power was diluted because the statutory scheme weighted the protest votes against small landowners.
 
 
 9
 Appellants contended below and here claim that R.C.W. 36.94.230 is unconstitutional because it permits only owners of real property within the County to divest the Commission of its power to form the Utility District by resolution. The nonlandowning tenants, who are thus disenfranchised, contend that the statute denies them equal protection, relying on such cases as Phoenix v. Kolodziejski (1970) 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523. Shouse, who was both a small landowner within the Utility District and a tenant, claims that the provision of the statute that weights the landowner's vote in proportion to the area of land owned denies him equal protection by diluting his franchise and that of other owners of small parcels of land. The appellants sought a declaration that the protest vote portion of the statutory scheme is unconstitutional, that the resolution falls with it, and that financing and construction of the sewer project purportedly authorized by the resolution be enjoined.
 
 II
 
 10
 We cannot agree with the district court that the appellants' claim for relief was barred by limitations or laches. The district court reached that conclusion on the assumption that the limitation provision within the statute attacked was applicable to this Section 1983 action.[3] The assumption is wrong.
 
 
 11
 Federal law controls the limitations issues in actions brought under 42 U.S.C. § 1983. (McNeese v. Board of Education (1963) 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622.[4] Because no federal statute of limitations has been enacted, the federal law has adopted those state limitations provisions which the federal court deems applicable to the federal cause of action.[5] When we select the state statute from the available candidates, we try to choose that statute which applies to those state actions that resemble our Section 1983 action and that are sufficiently generous in the time periods to preserve the remedial spirit of federal civil rights actions.[6]
 
 
 12
 The built-in limitation period prescribed by R.C.W. 36.94.240 cannot be applied to this Section 1983 action. The statute was not designed to reach federal constitutional attacks on the statute itself, but, even if that intent were present, we would not borrow a 30-day limitations period in a civil rights action. The provision in question closely resembles claims statutes, rather than statutes of limitations, imposed to require notice and filing of claims against public officers and municipal governments as conditions precedent to filing suit. We have specifically refused to engraft claims provisions of this kind upon federal civil rights actions. (Donovan v. Reinbold (9th Cir. 1970) 433 F.2d 738.)[7]
 
 
 13
 The state limitations statute that we have repeatedly borrowed is a statute that prescribes the limitations for actions founded on a liability created by statute. (Bergschneider v. Denver (9th Cir. 1971) 446 F.2d 569; Ney v. State of California (9th Cir. 1971) 439 F.2d 1285; Donovan v. Reinbold, supra, 433 F.2d 738; Smith v. Cremins (9th Cir. 1962) 308 F.2d 187.) That choice is unavailable here because Washington does not have such a statute.
 
 
 14
 Two Washington catch-all statutes are the only ones that are potentially suitable: (1) R.C.W. 4.16.080(2), restricting to three years an action "for any other injury to the person or rights of another not hereinafter enumerated," and (2) R.C.W. 4.16.130, limiting to two years "an action for relief not hereinbefore provided for." We have some authority in our Circuit that the proper statute to borrow is the former. (Horn v. Bailie (9th Cir. 1962) 309 F.2d 167 ("The Civil Rights Act has provided no statute of limitations and accordingly state law is used. Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743. Under Washington law the statute permits three years for the bringing of such an action as this.").) The Washington Supreme Court has not clearly decided whether actions founded upon a state statute fall in one or the other statutory category. The Washington law is fairly described in State ex rel. Bond v. State (1962) 59 Wash.2d 493, 498, 368 P.2d 676, 679, as follows: An action based on a statute "may or may not" fall within R.C.W. 4.16.130 (Bond applied R.C.W. 4.16.080(2) to an action under a veteran's preference statute, which it compared to "the statutory right of action given for violation of civil rights by a Federal statute." 368 P.2d at 678.) We need not resolve the question in this case because the action was brought long before the shorter of the two limitations periods could have run.
 
 
 15
 The laches doctrine is inapplicable. The appellants filed suit very promptly. It is extremely rare for laches to be effectively invoked when a plaintiff has filed his action before limitations in an analogous action at law has run. Laches cannot be successfully raised in absence of the defendant's pleading and proof of prejudice caused by the delay in filing suit. No such prejudice has been either pleaded or proved in this case. Difficulties caused by the pendency of a lawsuit, and not by delay in bringing the suit do not constitute prejudice within the meaning of the laches doctrine.
 
 III
 
 16
 The primary burden of the briefs on appeal is a discussion of the interesting and difficult constitutional issues that are raised by the voting restrictions placed by R.C.W. 36.94.240 on the qualifications of voters to participate in the protest vote. We do not reach the merits of these constitutional questions for two reasons: (1) It is premature for us to decide these questions because they were not decided below, and (2) our construction of the severability clause of the statute may avoid the necessity of our ever reaching the constitutional issues because appellants may not thereafter be sufficiently interested in the constitutional issues to litigate the questions.
 
 R.C.W. 36.94.920 expressly provides:
 
 17
 "If any portion of this chapter as now or hereafter amended, or its application to any person or circumstances, is held invalid or unconstitutional, such adjudication shall not affect the validity of the chapter as a whole, or any section, provision or part thereof not adjudged to be invalid or unconstitutional, and its application to other persons or circumstances shall not be affected."
 
 
 18
 The statutory question is whether the protest provisions of the statute are severable; thus, even if those provisions are invalid for any reason, the protest provisions can be excised, leaving the remainder of the statutory scheme intact. We conclude that the protest provisions are severable.
 
 
 19
 In State v. Anderson (1972) 81 Wash.2d 234, 501 P.2d 184, the Washington Supreme Court said:
 
 
 20
 "An act of the legislature is not unconstitutional in its entirety because one or more of its provisions is unconstitutional unless the invalid provisions are unseverable and it cannot reasonably be believed that the legislature would have passed the one without the other, or unless the elimination of the invalid part would render the remainder of the act incapable of accomplishing the legislative purposes." (501 P.2d at 185-86.)
 
 
 21
 Under Washington law, severability or separability, where part of the statutory scheme is invalid or unconstitutional, is primarily a matter of legislative intent. For instance, the sole question in State v. Anderson, supra, 501 P.2d at 185, was ". . . whether the superior court erred in finding those portions of the statute enacting new laws relating to gambling unseverable from what was conceded to be an unconstitutional attempt to legitimize bingo." In order to answer this question, the Washington Supreme Court considered whether "the legislature would have passed the remaining portion of the statute without the unconstitutional portion . . . ." (State v. Anderson, supra, 501 P.2d at 185-86.)
 
 
 22
 The Washington Supreme Court concluded that the legislature would have passed the remaining portion of the statute regardless of the unconstitutionality of the provision regulating bingo. The key factor in the court's determination of legislative intent was the presence of a severability clause in the challenged act.
 
 
 23
 "The determination by this court of whether the legislature would have passed one portion of the act without the other is assisted by the absence or presence of language in the act indicating legislative intent. When a provision in an act states if any section or provision should be adjudged to be invalid or unconstitutional, such adjudication should not affect the validity of the act as a whole or any provision or part thereof not adjudged invalid or unconstitutional, such a provision furnishes assurance to the court that it may properly sustain the separate sections or provisions of a partially invalid act without hesitation or doubt as to whether the legislature would have adopted the valid portion had they been advised of the invalidity of the affected part. (Citations omitted.) The presence of a severability clause . . . offers to the courts the necessary assurance that the remaining provisions would have been enacted without the portions which are contrary to the constitution." (State v. Anderson, supra, 501 P.2d at 186.)
 
 
 24
 We have precisely that legislative assurance in the severability clause quoted from R.C.W. 36.94.920. The invalidity, if any, of the protest voting procedure will not invalidate the remainder of the statute.
 
 
 25
 The net product is that, even if the appellants are entitled to a declaration that the protest provisions are invalid, they would not be entitled to enjoin the appellees from proceeding with the project as authorized by the valid portions of the statute.[8]
 
 IV
 
 26
 One point deserves brief mention. We fully agree with the district court's dismissal of Pierce County as a defendant because municipal subdivisions are not "persons" within the meaning of Section 1983. (City of Kenosha v. Bruno (1973) 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109; Monroe v. Pape (1961) 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.)
 
 
 27
 We wipe the constitutional slate clean by vacating that portion of the opinion below under the heading "IV Equal Protection" from and after the first sentence, "As indicated, we do not reach the constitutional questions." The casual remarks stricken should not be permitted to cloud any ultimate determination of the constitutional issues.[9]
 
 
 28
 Reversed in part, affirmed in part, and remanded to the district court for further proceedings consistent with the views herein expressed. The parties shall bear their own costs on appeal.
 
 
 29
 Judge BURNS concurs in the result.
 
 
 
 *
 Honorable James M. Burns, United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 425 U.S. 929, 96 S.Ct. 1658, 48 L.Ed.2d 171
 
 
 [2]
 A Utility District may be formed by either of two methods. If initiated by petitions signed by owners of fifty-one percent of the area of land within the proposed district, the district can be formed by action of the Board of County Commissioners, following public hearing, and the Board's action is conclusive. Alternatively, a Board of County Commissioners can initiate formation by adopting a resolution declaring its intent to do so; mailing notice of its intent, of a public hearing, of estimated assessments, and of protest rights to property owners (as shown on tax rolls); conducting a public hearing; considering protests; and finally, by proceeding with the project. In the latter instance, the ability of a board to proceed can be divested by the filing of sufficient protests pursuant to R.C.W. 36.94.240
 
 
 [3]
 The limitations provision of R.C.W. 36.94.240, in context provides:
 "(T)he board shall conduct a public hearing at the time and place designated in the notice to the property owners. . . .
 "After said hearing the commissioners shall have jurisdiction to overrule protests and proceed with any such improvement initiated by petition or resolution: Provided, That the jurisdiction of the commissioners to proceed with any improvement initiated by resolution shall be divested by protests filed with the clerk of the board prior to said public hearing signed by the owners, according to the records of the county auditor, of at least forty percent of the area of land within the proposed local district. No action whatever may be maintained challenging the jurisdiction or authority of the county to proceed with the improvement and creating the utility local improvement district or in any way challenging the validity thereof or any proceedings relating thereto unless that action is served and filed no later than thirty days after the date of passage of the resolution ordering the improvement and creating the local district." (Emphasis supplied.)
 
 
 [4]
 "(T)he (§ 1983) right alleged is as plainly federal in origin and nature as those vindicated in Brown v. Board of Education, 347 U.S. 483 (74 S.Ct. 686, 98 L.Ed. 873). Nor is the federal right in any way entangled in a skein of state law that must be untangled before the federal case can proceed. For petitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. It is immaterial whether respondents' conduct is legal or illegal as a matter of state law. Monroe v. Pape, supra (365 U.S. 167), at 171-187 (81 S.Ct. (473) at 475-484, 5 L.Ed.2d 492). Such claims are entitled to be adjudicated in the federal courts." (373 U.S. at 674, 83 S.Ct. at 1437 (footnote omitted).)
 
 
 [5]
 "In determining which period of limitation to apply to an action under a particular federal statute, the federal court accepts the state's interpretation of its own statutes of limitations, but determines for itself the nature of the right conferred by the federal statute." (Smith v. Cremins (9th Cir. 1962) 308 F.2d 187, 189 (footnotes omitted).)
 
 
 [6]
 As Mr. Justice Harlan said, concurring in Monroe v. Pape (1961) 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492: "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right." An action attacking a statute on state grounds is different from and less serious than an attack on the same statute on federal constitutional grounds
 
 
 [7]
 We will not borrow a claims-type limitation provision directly, nor will we do so indirectly, as the appellees argue, by borrowing a general statute which, in turn, defers to a special limitations provision, like R.C.W. 36.94.240. Accordingly, we reject appellees' contention that the general introductory language of Washington's code ("Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued except when in special cases a different limitation is prescribed by statute." R.C.W. 4.16.010) should be applied to lead us to R.C.W. 36.94.240
 
 
 [8]
 We express no views about the validity of the project under the remaining provisions of the statute in the event that the protest provisions are ultimately held unconstitutional. Nor do we express any opinion about the standing, if any, of the appellants to challenge the non-protest provisions of the statute
 
 
 [9]
 We deem the remarks casual because thoughtful consideration of the constitutional issues, if reached, would have required meticulous analysis of such important cases bearing on the issues in addition to Salyer Land Co. v. Tulare Basin Water Storage Dist., supra, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659, as Hill v. Stone (1975) 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172; Associated Enterprises, Inc. v. Toltec Watershed Improvement Dist. (1973) 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675; City of Phoenix v. Kolodziejski (1970) 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523; Cipriano v. City of Houma (1969) 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; and Kramer v. Union Free School District No. 15 (1969) 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583. The citation to Field v. Barber Asphalt Paving Co. (1904) 194 U.S. 618, 24 S.Ct. 784, 48 L.Ed. 1142, of course, would have been deleted because, to the extent that the decision is apposite, it has been overruled by many modern cases