Joseph WAHBA, as Administrator of the Goods, Chattels and Credits of Mark Wahba, an infant under the age of fourteen years, Joseph Wahba, individually, and Afrith Wahba, Plaintiffs,

v.

H & N PRESCRIPTION CENTER, INC., doing business as Zuckerman's Pharmacy, Defendant.

No. 81 CV 3061.

United States District Court, E. D. New York.

May 12, 1982.

Queller, Fisher & Block by Michael Weinberger, New York City, for plaintiffs.

Whitman & Ransom by John Condon Young, New York City, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Chief Judge:

Plaintiffs seeks compensatory and punitive damages for the death of their son contending that had defendant dispensed a drug in a "child-proof" container the child would not have died. Defendant moves to strike the claim for punitive damages. For the reasons stated below, the motion must be granted.

### I. *Facts*

In June 1980, the defendant H & N Prescription Center, Inc., doing business as Zuckerman's Pharmacy in Brooklyn, filled plaintiffs' prescription for Lomotil, a drug used to counteract stomach disorders. According to the complaint, thirty tablets were dispensed in a small plastic container unequipped with the "child-proof" cap as required by law. 16 C.F.R. §§ 1700.14, 1700.15 (1981).

Plaintiffs' two year old son came upon the container and ingested approximately twenty of the pills before being interrupted by his mother. He was rushed to the hospital, lapsed into coma and died.

The complaint pleads ten causes of action, four under federal law, pursuant to section 23 of the Consumer Product Safety Act (Act), 15 U.S.C. § 2072 (1976 & Supp. III 1980), and six pendent under state common law. Punitive damages were not included in the relief demanded in connection with the state causes of action because of the rule that such damages are not recoverable under New York law in either wrongful death, N. Y. Est. Powers & Trusts Law §§ 5–4.1, 5–4.3; *Robert v. Ford Motor Co.*, 73 A.D.2d 1025, 424 N.Y.S.2d 747 (3d Dep't 1980), or survival actions, N. Y. Est. Powers & Trusts Law § 11–3.2; *Rosenfeld v. Isaacs*, 79 A.D.2d 630, 433 N.Y.S.2d 623 (2d Dep't 1980).

■ Defendant maintains that the state rule applies to the federal claims under the Consumer Product Safety Act. This issue appears to be one of first impression. The conclusion that the measure of recovery under the Act is a function of state rather than federal law is compelled both by the language and the legislative history of the Act.

## II. *Law*

### A. *History of Act*

The Consumer Product Safety Act was the fruit of years of work by the legislature and others who recognized that modern technology and merchandising methods posed increasing threats to the nation's consumers. Prior to 1972, Congress had enacted a number of laws designed to combat dangers posed by specific categories of consumer products. *See, e.g.,* Flammable Fabrics Act of 1953, 15 U.S.C. §§ 1191–1204; Federal Hazardous Substances Act, 15 U.S.C. §§ 1261–1274; Child Protection Act of 1966 and Child Protection and Toy Safety Act of 1969, 15 U.S.C. §§ 1261–1265, 1273, 1274; Refrigerator Safety Act, 15 U.S.C. §§ 1211–1214; Poison Prevention Packaging Act of 1970, 15 U.S.C. §§ 1261, 1471–1476; Federal Caustic Poison Act, 15 U.S.C. §§ 401–411 (repealed); Radiation Control for Health and Safety Act of 1968, 42 U.S.C. §§ 263b–263n; National Traffic & Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1391–1409, 1421–1426, 1431. This categorical approach "resulted in a patchwork pattern of laws which, in combination, extend[ed] to only a small portion of the multitude of products produced for consumers." Consumer Product Safety Act of 1972, House Commerce Committee, H.R. Rep.No.1153, 92d Cong., 2d Sess. 22 (1972), *reprinted in* The Consumer Product Safety Act, Text, Analysis, Legislative History (BNA), Appendix 211, 212–13 (1973). *Accord,* Consumer Safety Act of 1972, Senate Commerce Committee, S.Rep.No.749, 92d Cong., 2d Sess. 1–3 (1972), *reprinted in* The Consumer Product Safety Act, Text, Analysis, Legislative History (BNA), Appendix 61, 61–63 (1973).

In 1967 Congress established the National Commission on Product Safety to examine methods of protecting consumers against unreasonable risks of injury from household products and to propose remedies for existing legal inadequacies. Act of Nov. 20, 1967, Pub.L.No.90–146, 81 Stat. 466. After more than two years of study, the Commission submitted its final report to Congress in June, 1970. In 1972 the Act established the Consumer Products Safety Commission, an independent federal regulatory agency vested with broad authority to protect against hazardous consumer products. Pub. L.No.92–573, 86 Stat. 1207 (1972), 15 U.S.C. §§ 2052–2082. *See generally* P. Sherman, Products Liability for the General Practitioner, §§ 4.04–4.06 (1981).

■ One of the Act's primary purposes, and one of the Commission's principal means of fulfilling its mission, has been the promulgation of uniform national safety standards for consumer products. 15 U.S.C. § 2051(b)(3). The statute contains a comprehensive enforcement scheme including such measures as civil and criminal penalties, injunctive remedies and seizure. *Id.* §§ 2069–2071, 2073 (1976 & Supp. II 1978).

### B. *Express Provision for Damages in Act*

In addition the Act expressly affords a private right of action to any person who sustains injury by reason of any knowing violation of a consumer product safety rule. Section 2072(a) of title 15 provides:

> *Any person who shall sustain injury* by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, *shall recover damages sustained, and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonable attorneys' fees* (determined in accordance with section 2059(e)(4) of this

title) *and reasonable expert witnesses' fees*: Provided, That the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, unless such action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity. (Emphasis added.)

15 U.S.C. § 2072(a) (1976 & Supp. IV 1980).

Although the Act's measure of recovery, "damages sustained," is employed in more than fifty federal laws, the meaning of the term has rarely been decided. The one interpretation rendered by the Supreme Court concluded that the phrase limited recovery to actual compensatory damages in a labor relations matter. *Local 20, Teamsters Union v. Morton*, 377 U.S. 252, 260–61, 84 S.Ct. 1253, 1258–59, 12 L.Ed.2d 280 (1964). The case is of limited significance, however, because it is distinguishable on the independent ground that punitive sanctions do not comport with national labor policy. *See International Board of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Local 60, United Board of Carpenters v. NLRB*, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961); *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6 (1940). In other contexts, courts have allowed punitive damages to be assessed pursuant to statutes authorizing recovery of "damages sustained," but with no generally applicable supporting rationale. *Hometowne Bldrs., Inc. v. Atlantic National Bank*, 477 F.Supp. 717 (E.D.Va.1979) (damages caused by violation of criminal banking law awarded under 12 U.S.C. § 503); *Wright v. Chicago Burlington & Quincy R. R.*, 223 F.Supp. 660 (N.D.Ill.1963) (damages for prejudicial treatment by a common carrier assessed under 49 U.S.C. § 8).

Since the statute's words are inconclusive, the court must consider whether an award of punitive damages under the Act would "conflict with the congressional judgment reflected both in the language of the federal statute and its legislative history." *Teamsters Local 20 v. Morton*, 377 U.S. 252, 260, 84 S.Ct. 1253, 1258, 12 L.Ed.2d 280 (1964).

### C. *Legislative History of Damage Provision*

The bill proposed by the National Commission on Product Safety provided for recovery of treble damages in addition to the cost of suit and a reasonable attorney's fee. National Commission on Product Safety, Consumer Product Safety Bill § 30 (1970), *reprinted in* The Consumer Product Safety Act, Text, Analysis, Legislative History (BNA), Appendix 31, 56 (1973). So too did the original house bill. H.R.15003, 92d Cong., 2d Sess. (1972). The National Commission viewed treble damages as a desirable deterrent as well as an important incentive to consumers to press private claims as a supplement to public enforcement of safety programs. *See* National Commission on Product Safety, Final Report 118 (1970). In the face of opposition from members of the Administration and others, however, the treble damages provision was deleted. *See, e.g.*, Hearings on Consumer Product Safety Act Before the *House Committee on Interstate and Foreign Commerce*, Part 3, 92d Cong., 1st & 2d Sess., Serial No. 92–61, at 972 (1972) (statement of Secretary of Health, Education and Welfare, Elliot L. Richardson), *quoted in* W. Kimble, Federal Consumer Product Safety Act, § 344, at 268 n. 10 (West 1975). The measure finally enacted limited recovery to "damages sustained" plus attorneys' fees; recovery of experts' fees was subsequently authorized. Consumer Product Safety Commission Improvements Act of 1976, Pub.L.No.94–284, § 10(c), 90 Stat. 507.

■ Treble damages and punitive damages share common functions: both are penalties imposed for the purposes of punishing the offender and deterring future offenses. *See John Mohr & Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 198 N.W.2d 363 (1972); *Johnson v. Joseph Schlitz Brewing Co.*, 33 F.Supp. 176, 177, 182 (E.D.Tenn. 1940), *aff'd*, 123 F.2d 1016 (6th Cir. 1941). Elimination of one without substitution of the other does not demonstrate that neither

was intended. *Cf.* cases holding treble and punitive damages mutually exclusive: *Arnott v. American Oil Co.*, 609 F.2d 873, 888 (8th Cir. 1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980); *Hometowne Bldrs., Inc. v. Atlantic National Bank*, 477 F.Supp. 717, 720 (E.D.Va.1979); *Hansen Packing Co. v. Armour & Co.*, 16 F.Supp. 784, 788 (S.D.N.Y.1936); *John Mohr & Sons, Inc. v. Jahnke, supra.* But it does suggest that having considered extra-compensatory damages as an incentive and windfall to private plaintiffs, Congress decided against them. *Cf., e.g.*, 12 U.S.C. § 3417 (Right to Financial Privacy Act of 1978); 15 U.S.C. § 1640 (Truth-in-Lending Act); 15 U.S.C. § 1681n (Fair Credit Reporting Act); 15 U.S.C. § 1691e (Equal Credit Opportunity Act); 15 U.S.C. § 1693m (Electronic Fund Transfers Act); 15 U.S.C. § 1692k (Debt Collection Practices Act) (explicit punitive damages provisions); 15 U.S.C. § 15 (Sherman Antitrust Act); 15 U.S.C. § 1989 (Motor Vehicle Information and Cost Savings Act Odometer Requirements) (explicit treble damages provisions). Assessment of legal fees and experts' fees (added by the Consumer Product Safety Commission Improvements Act of 1976, Pub.L.No.94–284, § 10(c), 90 Stat. 507), is such an unusual and heavy burden, in light of the standard American practice against shifting litigation costs, as to warrant the conclusion that Congress considered such sanctions in a private suit sufficient incentive to prospective plaintiffs and disincentive to possible defendants.

The nature of the Act and the enforcement scheme it employs also support the conclusion that Congress did not intend punitive damages to be awarded as a matter of federal law. Such uniform punitive sanctions as were thought to be necessary and desirable are incorporated in sections 2069 and 2070 providing for the levy of civil and criminal penalties. 15 U.S.C. §§ 2069, 2070 (1976 & Supp. II 1978). Injunctive enforcement and seizure is also available to the government. *Id.* § 2071. There is no need to add to this arsenal by a judicial interpretation that would strain the pattern and history of the Act.

■ No comfort to plaintiffs is provided by the saving clause contained in section 2072(c). It states that "[t]he remedies provided for in this section shall be in addition to and not in lieu of any other remedies provided by common law or under Federal or State law." 15 U.S.C. § 2072(c) (1976). This provision preserves the federal character of the cause of action created by subsection (a) of section 2072, essentially one of strict liability, notwithstanding possible state law restrictions on theories of liability. Subsection (c) appears designed to guarantee plaintiffs the option of a federal hearing, regardless of the availability of other forums, and to make clear that a knowing violation of a consumer product rule alone would give rise to liability without resort to proof of negligence or breached warranties. It does not deal with the punitive damage issue.

The Act leaves many questions unanswered such as what period of limitation applies; does the right survive the death of the injured party; are principles of contributory or comparative fault operative; who is a "person injured" with standing to maintain the action as well as what types of damages may be recovered. To fill such gaps the draftsmen relied upon state law noting that:

> "The committee anticipates, in cases in which it is established that death, personal injury or illness occurred by reason of noncompliance with the consumer product safety rule . . ., that *the courts will in general apply State law as to questions of which types of damages may be recovered* and which parties in addition to the injured person can recover damages." (Emphasis added.)

H.R.Rep.No.1153, 92d Cong., 2d Sess. 47 (1972), *reprinted in* The Consumer Product Safety Act, Text, Analysis, Legislative History (BNA), Appendix 211 (1973). *Cf.* H.R. 15003, § 23(a)(1), 92d Cong., 2d Sess. (1972); W. Kimble, Federal Consumer Product Safety Act § 345, at 270 n. 12 (1975) (elimination of specification of parties entitled to recover from bill passed by House). Appar-

ently the legislature was determined to unify product safety standards and to provide an enforcement mechanism but was not willing to completely supersede state tort law in matters of compensation and recovery. This legislative determination must be respected.

■ Federalization of all product liability law is a proposition of some merit. *See generally,* Department of Commerce, "Model Uniform Product Liability Act," § 120, 44 Fed.Reg. 62,714 (1979) (permitting the award of punitive damages upon a showing by clear and convincing evidence of the product seller's reckless disregard for the consumer's safety); Senate Consumer Subcommittee Working Draft Tort Reform Bill, § 11, 97th Cong., 1st Sess. (Oct. 15, 1981), *reprinted in* 9 Prod.Safety & Liab.Rep. (BNA) 799, 807 (Oct. 16, 1981); V. E. Schwartz, Memorandum Submitted to the Product Liability Alliance, *quoted in part in* 9 Prod.Safety & Liab.Rep. (BNA) 951 (Dec. 18, 1981) (variations in state law make federal products liability law desirable). *But cf.* H.R.5214, § 11, 97th Cong., 1st Sess. (1981) (federalizing products liability law but committing availability of punitive damages to determination under state law); 10 Prod.Safety & Liab.Rep. (BNA) 185 (March 19, 1982) (reform should be left to state experimentation according to American Bar Association House of Delegates and others). But national unification is a development whose time has not yet come and attempts to enact a federal products liability code have been unsuccessful. *See, e.g.,* H.R.5261, 97th Cong., 1st Sess. (1981); H.R. 5214, 97th Cong., 1st Sess. (1981); H.R.7921, 96th Cong., 2d Sess. (1980); H.R.7000, 96th Cong., 2d Sess. (1980); H.R.5626, 96th Cong., 1st Sess. (1979). This task, which Congress has declined, is not the courts'.

### D. *Appropriateness of State Law*

■ In filling the "interstices of federal law," *Moor v. County of Alameda,* 411 U.S. 693, 701, 93 S.Ct. 1785, 1791, 36 L.Ed.2d 596 (1973), the choice between national uniformity and state conformity depends upon whether the "implementation of federal in-

terests requires overriding the particular state rule involved." *United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966). Where federal objectives can be realized only through a uniform rule, the vagaries of state law will not be allowed to frustrate nationwide goals. *See, e.g., Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970); *Hu Yau-Leung v. Soscia,* 500 F.Supp. 1382 (E.D.N.Y.1980), *reversed on other grounds,* 649 F.2d 914 (2d Cir. 1981); *In re Johnson,* 292 F.Supp. 381 (E.D.N.Y.1968). But where programs and actions do not by their nature require uniformity, the courts of each state will be free to resort to state law. *See United States v. Yazell, supra,* at 352, 86 S.Ct. at 507; *De Sylva v. Ballentine,* 351 U.S. 570, 581, 76 S.Ct. 974, 980, 100 L.Ed. 1415 (1956).

■ The cause of action created by section 2072 of the Consumer Product Safety Act is essentially one sounding in tort, an area of the law traditionally the province of the states. When Congress has entered this field it has generally enacted legislation dependent upon state law for gap-filling. *See, e.g.,* Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1976); Price-Anderson Act, 42 U.S.C. § 2210 (1976); Civil Rights Act, 42 U.S.C. § 1983 (1976); *Burks v. Lasker,* 441 U.S. 471, 478, 99 S.Ct. 1831, 1837, 60 L.Ed.2d 404 (1979). Occasionally the courts have modified the effect of absorbed state law, as, for example in selecting from among the available state statutes of limitations in actions under the Civil Rights Act because of the special needs of plaintiffs in this kind of action. *Pauk v. Board of Trustees of City University of New York,* 654 F.2d 856 (2d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Singleton v. City of New York,* 632 F.2d 185 (2d Cir. 1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Taylor v. Mayone,* 626 F.2d 247 (2d Cir. 1980); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir. 1980); *Johnson v. Davis,* 582 F.2d 1316 (4th Cir. 1978); *Green v. Ten Eyck,* 572 F.2d

1233 (8th Cir. 1978); *Shouse v. Pierce County*, 559 F.2d 1142 (9th Cir. 1977).

■ Promotion of the federal policy in favor of consumer protection embodied in the Act does not require such uniformity with respect to punitive damages as would justify displacing existing state law on the subject, although serious enforcement problems continue. Failure to gain adequate compliance at the retail level with Consumer Products Safety Commission regulations too often leads to tragedy. *See, e.g.*, 10 Prod.Safety & Liab.Rep. (BNA) 179 (March 19, 1982). For example, in the first six years of the Commission's existence, accidental ingestion of aspirin, a product sold over-the-counter and packaged in child-proof containers at the manufacturing source, dropped by 56% while accidental ingestion of prescription drugs, which must be outfitted with safety caps at the local dispensary, declined only 15%. 9 Prod.Safety & Liab.Rep. (BNA) 215 (March 6, 1981). In 1980, the Commission reported that unacceptably high levels of accidental ingestion persist and acknowledged difficulty in identifying non-complying dispensers. Thus, a new project was proposed for 1981 designed to enforce the child-resistant packaging requirement against pharmacies through a program of inspection, undercover "consumer buys" and general surveillance. *See* 8 Prod.Safety & Liab.Rep. (BNA) 736 (Oct. 17, 1980); *id.* at 825 (Nov. 21, 1980).

Given the Commission's present inability to fully police the field, private actions against the local supplier may be vital not only to the litigant but also to a society dependent upon such private suits. In such actions where actual damages recoverable are apt to be low due to the age of the injured party or other reasons, the possibility of an exemplary award may be a necessary incentive to plaintiffs to vindicate the purposes of the Act. *See generally* J. D. Ghiardi & J. J. Kircher, Punitive Damages: Law and Practice, chap. 2 (1981); Mallor & Roberts, Punitive Damages: Toward a Principled Approach, 31 Hastings L.J. 639, 647–50 (1980). Furthermore, because of the difficulties of proof in such cases, it might be important to retain the possibility of punitive damage awards in the few cases that succeed in order to preserve the deterrent potential. But the proof on this point is not available. *See generally* J. D. Ghiardi & J. J. Kircher, Punitive Damages, *supra*, § 2.09.

At best we can say only that punitive damages might enhance enforcement of the national policy embodied in the Act. Given that lack of certainty it would not be appropriate for the courts to override state interstitial law.

■ Nor is New York's prohibition against punitive damages so inconsistent with or inimical to federal interests that we must supersede it with judicially fabricated federal common law. *See Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). *Cf. United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 597, 93 S.Ct. 2389, 2399, 37 L.Ed.2d 187 (1973). Any diminution in recovery occasioned by the state rule neither substantially reduces the value of the federal right created by the statute, *see Board of Commissioners v. United States*, 308 U.S. 343, 350, 60 S.Ct. 285, 288, 84 L.Ed. 313 (1939), nor poses a substantial threat to national safety policy, *see Wallis v. Pan American Petroleum Corp., supra*, 384 U.S. at 68, 86 S.Ct. at 1304. Thus, a federal damage rule created by the courts rather than Congress is unnecessary and inappropriate at this time.

### Conclusion

■ The Consumer Product Safety Act does not provide for punitive damages unless they are permitted by state law. New York law precludes such damages.

Plaintiffs' claim for punitive damages is stricken.

So ordered.