[No. 37490.   Department One.   September 16, 1965.]

BEN C. WILCOX, *Appellant*, v. THE HOUSING AUTHORITY OF THE COUNTY OF KING *et al.*, *Respondents.**

*Adolf D. Koch* (of *Cohn & Koch*), for appellant.

*Montgomery, Purdue, Blankinship & Austin*, for respondents.

BARNETT, J.†—This action is brought under sections of the Veteran's Preference Act, RCW 73.16.010 and .015, to recover salaries due because of the alleged wrongful discharge of plaintiff (appellant) veteran and his replacement by a nonveteran. The defendant Housing Authority of the County of King (respondent, hereinafter referred to as the Authority) is a municipal corporation governed by a 5-man Board of Housing Commissioners (hereinafter called the Board) who are appointed for staggered 5-year terms by the King County Commissioners. The Authority employs a secretary who is also its executive director, and the Board determines his qualifications, duties and salary. Defendants here were Commissioners of the Authority at the time of termination of plaintiff's employment. Plaintiff, a veteran with 34 years' service with the Coast

*Reported in 405 P.2d 723.

†Judge Barnett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Guard, was employed by the Authority in 1950 as its secretary and executive director to succeed one Shanafelt, a nonveteran. The Authority decided to replace the plaintiff because of his inability to handle public relations with respect to the Lakewood Project.

The Lakewood Project was temporary housing constructed by the federal government during World War II to house defense workers. It became dilapidated and the Authority sought to replace it with modern low cost housing. To do this, financing had to be done through the Federal Public Housing Administration which required a cooperation agreement between the Housing Authority of King County and King County, pursuant to RCW 35.83. The King County Commissioners were reluctant to enter into the cooperation agreement in the face of community opposition. Plaintiff, as the representative of the Authority, was less than courteous at a time when good public relations were necessary. He failed to keep appointments with members of a citizens' committee made up of representatives of various civic and county organizations which had been formed for the purpose of working with the Authority in doing away with the Lakewood Project; he hung up the telephone on the community newspaper editor; he challenged the motives of a member of the committee and did other acts not designed to win friends and influence people.

The attitude of the community hardened into opposition of the Authority.

The Authority decided to terminate plaintiff's employment, but he was not actually notified of it, only that he might be replaced. Plaintiff retired in October, 1960. The Authority rehired Shanafelt, a nonveteran who held the position in 1950 when he was replaced by the plaintiff.

Community relations improved. The cooperation agreement with King County was executed. The Lakewood Project was razed. A replacement project was built.

Plaintiff alleged that he was discharged from his employment contrary to the provisions of RCW 73.16.010:

> In every public department, and upon all public works of the state, and of any county thereof, honorably discharged soldiers, sailors, and marines who are veterans of any war of the United States, or of any military campaign for which a campaign ribbon shall have been awarded, and their widows, shall be preferred for appointment and employment. Age, loss of limb, or other physical impairment, which does not in fact incapacitate, shall not be deemed to disqualify them, provided they possess the capacity necessary to discharge the duties of the position involved.

He sought to avail himself of remedies under RCW 73-.16.015:

> Any veteran entitled to the benefits of RCW 73.16.010 may enforce his rights hereunder by civil action in the courts.

The plaintiff complained, and the trial court found, that he was discharged without notice, and without any formal hearing.

Plaintiff seeks to recover salary difference in monthly state retirement pay and social security that he would have received from October 1, 1960, through August of 1962, when he would have reached the mandatory retirement age.

The trial court concluded that the Veteran's Preference Act applied to the Authority, but that the Board acted reasonably in discharging the plaintiff.

Judgment was rendered dismissing the complaint with prejudice and a contingent finding was made as to plaintiff's "damages herein had he prevailed" in order to avoid a new trial.

■ Initially we are confronted with the threshold question that will be dispositive of this case. Is the Housing Authority of King County a "public department" within the meaning of the Veteran's Preference Act, RCW 73.16-.010, set forth herein, *supra*? The Authority emphatically maintains that it is not. We agree. The history of the Veteran's Preference Act has already been discussed by this court in *State ex rel. Bond v. State*, 59 Wn.2d 493, 368 P.2d 676 (1962). That act predates the creation of the various housing authorities in the state. A brief reference to

the background and purpose of the housing authority legislation is useful at this juncture.

The federal low rent housing act designed to employ funds and credit of the United States to assist the several states and their political subdivisions in achieving the declared policy of the United States ". . . to promote the general welfare of the Nation . . . to alleviate present and recurring unemployment and to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings . . ." was enacted in 1937. 50 Stat. 888 (Sept. 1, 1937), as amended, 42 U.S.C. § 1401 (1959).

This state, desiring to participate in the program, enacted a Housing Authorities Law, Laws of 1939, ch. 23, codified as RCW 35.82.010 *et seq.,* and a Housing Cooperation Law, Laws of 1939, ch. 24, codified as RCW 35.83.005, *et seq.*

A housing authority is a "public body corporate and politic" existing in each city and county in the state. However, it cannot transact any business or exercise its powers until such time as the governing body of the city or county, as the case may be, shall declare by resolution that there is need for a housing authority to function in such city or county. RCW 35.82.030.

In RCW 35.82.070, the powers of authority are delineated and there is a reiteration that the authority is a "public body corporate and politic."

In capsule form, some of the powers granted are:[1] to sue and be sued; to have perpetual succession; to make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the authority and to make and from time to time amend and repeal bylaws, rules and regulations; to prepare, carry out, acquire, lease, and operate housing projects; to arrange or contract for the furnishing by any person or agency, public or private, of services, privileges, works or facilities for or in connection with a housing project; to lease or rent buildings; to

[1]RCW 35.82.070.

acquire by the exercise of the power of eminent domain any real property; to sell or lease any real or personal property; to procure insurance or guarantees from the federal government of the payment of any bonds issued by an authority.

Thus, it will be noted that a maximum of discretion is vested in the housing authority in the management of projects. This was the policy intended by the federal legislation. In 42 U.S.C.A. § 1401, p. 202, Congress provides in part:

> It is the policy of the United States to vest in the local public housing agencies the maximum amount of responsibility in the administration of the low-rent housing program, including responsibility for the establishment of rents and eligibility requirements (subject to the approval of the Authority), with due consideration to accomplishing the objectives of this chapter while effecting economies.

The Washington legislature in RCW 35.83.010 provides in part:

> [I]t is a proper public purpose for any state public body to aid any housing authority operating within its boundaries or jurisdiction or any housing project located therein, as the state public body derives immediate benefits and advantages from such an authority or project;
> . . . . .

RCW 35.83.030 authorizes any state public body to cooperate in the construction or operation of any housing project located in the area in which it is authorized to act.

RCW 35.83.040[2] requires a cooperation agreement between the Housing Authority and the county in which it is located as to the payments to be made by the Housing Authority.

---

[2]RCW 35.83.040: "In connection with any housing project located wholly or partly within the area in which it is authorized to act, any state public body may agree with a housing authority or the federal government that a certain sum (in no event to exceed the amount last levied as the annual tax of such state public body upon the property included in said project prior to the time of its acquisition by the housing authority) or that no sum, shall be paid by the authority in lieu of taxes for any year or period of years."

It is contended that in view of the fact that the housing authority can be created only with the consent of the governing body and that the power of appointment and removal is lodged with the governing body, the housing authority is therefore a "public department" of the state or county within the purview of RCW 73.16.010.

However, the Housing Authority is a separate entity, a separate body politic. There is, understandably, a close relation between the Authority and the county. The county is naturally interested in the results of the activities of the Authority.

The Superior Court of New Jersey in *Monte v. Milat*, 17 N. J. Super. 260, 265, 85 A.2d 822 (1952), said with reference to this contention:

> The fact that a housing authority can be created only by and with the consent of the governing body of a municipality and that the power of appointment and removal of its members is lodged with the municipality is indicative of the close relationship between the authority and the city, the latter naturally being interested in the result to be accomplished. But all that is entrusted to the municipality is the creation of the authority, not the delegation of its powers. The powers of the authority are derived, not from the municipality, but from the State, and the governing body of the municipality in deciding upon the desirability of creating an authority and in exercising the power of appointment and removal of its members is acting merely as a statutory agent. [Citing cases.]
>
> The Legislature, in granting each authority the power "to make and from time to time amend and repeal bylaws, rules and regulations, . . ." . . . in granting the authority the right to contract with the municipality to make payments in lieu of taxes, manifested an intention to maintain housing authorities as separate corporate entities.

In *Housing Authority of Los Angeles v. Los Angeles*, 38 Cal. 2d 853, 862, 243 P.2d 515 (1952), the court said:

> Each functioning body, the city and the housing authority, is a separate body politic vested with specific duties and powers under the Housing Authorities Law and Housing Cooperation Law to effect a state objective.

In *Board of Education of Detroit v. Campbell*, 256 Mich. 350, 355, 239 N.W. 370 (1931), the applicable veteran's preference law was identical to ours except that it expressly applied to municipal corporations. A veteran, an electrician, was discharged. He invoked the Veteran's Preference Act. The court said: "We are satisfied that a school district is not within the terms of the statute. It is not a 'public department,' nor are its employees engaged 'upon public works of the State.' . . . "

It is noted that some states have integrated housing authorities within existing departments of government. Such, however, has not been the course that the State of Washington has followed. The various housing authorities of cities and counties are separate entities invested with great autonomy to effectuate the purpose of their creation.

While the merits of the separate independent body approach of housing authorities has been both praised and criticized, it remains the mode to effectuate the congressional purpose that our legislature, in its wisdom, has prescribed for this state.

That the instant Housing Authority, like many others, often is an independent entity and not a department of the city, is illustrated in the following language in 72 Harv. L. Rev. 504, 509:

> Moreover, the creation of renewal agencies which are administratively and financially independent from city government has been criticized on the ground that such bodies are not sufficiently responsive to the popular will. On the other hand, the nonresponsiveness of such bodies is considered by some to be desirable to the extent that it insulates the task of renewal from those political pressures which are harmful.
>
> The need to satisfy the requirements of the workable program in order to qualify for federal aid exerts considerable pressure on a community to co-ordinate its renewal activities toward a single end. . . . Some cities have managed to integrate renewal activities into an existing department of city government.

We hold that the Housing Authority of the County of King is an independent entity authorized by statute to

make available the benefits of the Low-Rent Housing Act, *supra*, and that it is not a department of the state or county in the meaning of RCW 73.16.010. It follows also that the activities of the Authority are not public works of the state or county within the purview of RCW 73.16.010. Consequently, although the finding of the superior court on this issue is to the contrary, its judgment is, nevertheless, in accord with what we have said and it is, therefore, affirmed.

ROSELLINI, C. J., OTT and HUNTER, JJ., concur.

HILL, J. (concurring)—I concur in the result, being in accord with the trial court.