[No. 38540.    Department Two.    July 6, 1967.]

EDGAR B. MERCY, *Appellant,* v. THE CITY OF SEATTLE *et al.,*
*Respondents.**

*Hullin, Ehrlichman, Carroll & Roberts,* for appellant.

*A. L. Newbould* and *Gordon F. Crandall,* for respondent
City of Seattle.

*LeSourd & Patten* and *Dwayne E. Copple,* for respondent
Housing Authority.

HAMILTON, J.—The Housing Authority of the city of
Seattle, with appropriate site approval from the Seattle
City Council,[1] is proposing to construct a 300-unit apart-

*Reported in 429 P.2d 917.

---

[1]This was accomplished by Resolution No. 18990 adopted by the
Seattle City Council on March 12, 1962.

ment building for disabled or retired elderly persons of low income, to be known as Jefferson Terrace. The structure, if built, will be located at the corner of 8th Avenue and Jefferson Street in the First Hill area of the city, where traffic is somewhat congested due to existing business, residential, and hospital facilities. Upon application of the Housing Authority, and premised upon evidence that disabled or elderly persons occupying similar low-rent housing facilities do not utilize the normal number of automobile parking spaces, the Seattle City Council, after a public hearing before the Planning and Codes Committee of the council, passed ordinance No. 93537[2] which, by its terms, partially and conditionally exempted the proposed project from the off-street parking requirements of the Seattle Zoning and Platting Code.[3] Appellant, an apartment house owner in the First Hill area, along with other interested residents of the area, attended the public hearing, vigorously protested the requested relief from the parking requirements, and after passage of ordinance No. 93537 obtained a writ of certiorari challenging the validity of the ordinance and seeking to prohibit further action under it. The Housing Authority was permitted to intervene in the proceeding, and after trial the superior court entered findings of

[2]Ordinance 93537, passed by the Seattle City Council on December 14, 1964, reads as follows:

"Section 1. That the Seattle Housing Authority's proposed 300-unit apartment structure known as Jefferson Terrace and to be constructed at 8th Avenue and Jefferson Street for occupancy exclusively by low-income elderly persons is hereby excepted from the offstreet parking requirements of Section 23.3 of the Zoning Ordinance (Ordinance 86300 as amended by Ordinance 92492) pursuant to the authority of Chapter 24, § 4, Laws of 1939 (RCW 35.83.030) for the purpose of aiding and cooperating in the planning, undertaking, construction and operation of said Jefferson Terrace housing project, on the condition that seventy-three offstreet parking spaces be provided for said structure, such exception to continue in effect only so long as said structure is owned and operated by the Seattle Housing Authority for the accommodation of low-income elderly persons."

[3]Appellant contends that the pertinent Zoning and Platting Code provision (Sec. 26.46.110) requires one parking space for each dwelling unit. This contention, while disputed by the respondent city, was not made an issue either in the trial court or on appeal.

fact, conclusions of law, and judgment quashing the writ of certiorari and denying the application for a writ of prohibition. This appeal followed.

Basically, appellant challenges the jurisdiction and authority of the Seattle City Council to enact the pertinent ordinance without following the procedural steps outlined in the city zoning code for the making of zoning changes or the granting of zoning exceptions, variances, or conditional uses, *i.e.*, referral to and action by the planning commission or the board of adjustment, as the case might be. Respondent, city of Seattle, and the intervenor, Housing Authority, contend, however, that the city council derives and is invested with the requisite power by virtue of pertinent provisions of RCW 35.83, known as the Housing Cooperation Law.

We agree with the contention of respondent and the intervenor and affirm the trial court's action.

In 1937, the Congress of the United States passed the Low-Rent Housing Act, the purpose of which, among other things, was

> . . . to promote the general welfare of the Nation by employing its funds and credit, . . . to assist the several States and their political subdivisions . . . to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income, . . . . 50 Stat. § 1, 42 U.S.C. § 1401 (1937).

To permit the appropriate political subdivisions of this state to qualify for the benefits of the federal enactment, the state legislature enacted Laws of 1939, chs. 23 and 24, now codified, as amended, as RCW 35.82 and 35.83 respectively. *Housing Authority of Seattle v. Seattle*, 56 Wn.2d 10, 351 P.2d 117 (1960); *Wilcox v. Housing Authority of the Cy. of King*, 66 Wn.2d 864, 405 P.2d 723 (1965).

The first enactment, Laws of 1939, ch. 23 (RCW 35.82), designated as the "Housing Authorities Law," dealt with the creation, powers, duties and obligations of housing authorities, which were characterized in Laws of 1939, ch. 23, § 8 (RCW 35.82.070) as "a public body corporate and poli-

tic, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this act." Among the purposes for the enactment, the legislature declared in Laws of 1939, ch. 23, §§ 2(c) and (d) (RCW 35.82.010(3), RCW 35.82.010(4)) that:

> [T]he clearance, replanning and reconstruction of the areas in which insanitary or unsafe housing conditions exist and the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which public money may be spent and private property acquired and *are governmental functions of state concern;* . . . . (Italics ours.) Laws of 1939, ch. 23, § 2(c) (RCW 35.82.010(3)).

> [T]he necessity in the public interest for the provisions hereinafter enacted, *is hereby declared as a matter of legislative determination.* (Italics ours.) Laws of 1939, ch. 23, § 2(d) (RCW 35.82.010(4)).

Furthermore, and by way of pertinence to the issue presented in this case, the legislature provided in Laws of 1939, ch. 23, §§ 8 and 13 (RCW 35.82.070, 35.82.120):

> No provisions of law with respect to the acquisition, operation or disposition of property by other public bodies shall be applicable to an authority unless the legislature shall specifically so state. Laws of 1939, ch. 23, § 8 (RCW 35.82.070).

> All housing projects of an authority shall be subject to the planning, zoning, sanitary and building laws, ordinances and regulations applicable to the locality in which the housing project is situated. In the planning and location of any housing project, an authority shall take into consideration the relationship of the project to any larger plan or long-range program for the development of the area in which the housing authority functions. Laws of 1939, ch. 23, § 13 (RCW 35.82.120).

The second and contemporaneous enactment, Laws of 1939, ch. 24 (RCW 35.83), entitled the "Housing Cooperation Law," concerned itself with investing the various towns, cities, counties, and political subdivisions, which might establish housing authorities, with the necessary power and authority to cooperate with such authorities in

accomplishing their purposes. In the statute the legislature defined and referred to such political subdivisions as a "state public body," and the council, board of county commissioners or other similar body having charge of the subdivisions' fiscal affairs as the "governing body." With these definitions in mind the legislature then asserted in Laws of 1939, ch. 24, §§ 4, 7, and 8 (RCW 35.83.030, 35.83.060, 35.83.070):

> For the purpose of aiding and cooperating in the planning, undertaking, construction or operation of housing projects located within the area in which it is authorized to act, any state public body may upon such terms, with or without consideration, as it may determine:
>
> . . . .
>
> (d) Plan or replan, zone or rezone any part of such state public body; make exceptions from building regulations and ordinances; any city or town also may change its map;
>
> . . . .
>
> (h) Do any and all things, necessary or convenient to aid and cooperate in the planning, undertaking, construction or operation of such housing projects; . . . . Laws of 1939, ch. 24, § 4 (RCW 35.83.030)
>
> The exercise by a *state public body* of the powers herein granted may be authorized *by resolution of the governing body* of such state public body adopted by a majority of the members of its governing body present at a meeting of said governing body, which resolution may be adopted at the meeting at which such resolution is introduced. Such a resolution or resolutions shall take effect immediately and need not be laid over or published or posted. (Italics ours.) Laws of 1939, ch. 24, § 7 (RCW 35.83.060).
>
> The powers conferred by this act shall be in addition and supplemental to the powers conferred by any other law. Laws of 1939, ch. 24, § 8 (RCW 35.83.070).

█ Several things appear clear from a perusal of the foregoing legislation. Among them are (1) Laws of 1939, ch. 23, the Housing Authorities Law, relates primarily to the creation, powers, duties, and responsibilities of a housing authority, as a public body corporate and politic; (2)

Laws of 1939, ch. 24, the Housing Cooperation Law, essentially concerns itself with the implementary powers and authority of the governing body of a state public body (a city, town, county or other political subdivision) which establishes a housing authority; (3) both an established housing authority and the parent public body are thus legislatively treated as separate state agencies for the purpose of cooperatively carrying out a national and state objective, *e.g.*, the provision of safe and sanitary low-rent housing; (4) both such agencies derive their respective powers and duties, in carrying out such national and state aims within the state, directly from these rather comprehensive state statutes, rather than from local or municipal ordinances; and (5) both such enactments, in their respective areas, purport to supplant, supplement or add to the provisions of or the powers conferred on each agency by any other law.

From these observations, it is logical to conclude, as did the Supreme Court of California in *Housing Authority of Los Angeles v. Los Angeles,* 38 Cal. 2d 853, 861, 243 P.2d 515 (1952), that:

> The housing authority was thereby created as a state agency, "a public body corporate and politic" and is not an agent of the city in which it functions. Similarly the city under the Housing Authorities Law is an agency of the state, functioning under state law to fulfill state purposes, and is not acting pursuant to its fundamental law to effect solely municipal objectives. (*Housing Authority v. Superior Court, supra,* 35 Cal.2d 550, 558; *Kleiber v. City & County of San Francisco, supra.* 18 Cal.2d 718, 724-725.) Each functioning body, the city and the housing authority, is a separate body politic vested with specific duties and powers under the Housing Authorities Law and Housing Cooperation Law to effect a state objective. Neither is functioning independently of that state law. In pursuing the state objective each is governed by the state law and neither may exercise powers not vested or recognized by that law. The city and the housing authority function as administrative arms of the state in pursuing the state concern and effecting the legislative objective.

To this same general effect see also, *Drake v. Los Angeles,* 38 Cal. 2d 872, 243 P.2d 525 (1952); *Lockhart v. Bak-*

*ersfield,* 123 Cal. App. 2d 728, 267 P.2d 871 (1954); and *State ex rel. Great Falls Housing Authority v. Great Falls,* 110 Mont. 318, 100 P.2d 915 (1940).

■ Against this statutory and conceptual background, we come to the pivotal question posed in this case: Does the city council have the power, under the pertinent provisions of the Housing Cooperation Law (Laws of 1939, ch. 24, §§ 4 and 7, RCW 35.83.030 and 35.83.060, above quoted), to directly except or exempt, by appropriate resolution or ordinance, the housing authority from off-street parking requirements of the Seattle Zoning Code, notwithstanding the provisions of Laws of 1939, ch. 23, § 13 (RCW 35.82.120) rendering the housing authority amenable to local zoning laws, which, in turn, procedurally require prefatory action upon exceptions, variances, conditional uses, or zoning changes by the city planning commission or board of adjustment?

Bearing particularly in mind that the city acts in the premises and under the housing legislation as an agency of the state, *i.e.,* a "state public body," and is carrying out both national and state objectives as opposed to purely municipal objectives, we are convinced that the procedural question involved must be answered in the affirmative.

It would appear clear that by requiring a housing authority to conform to local zoning laws and ordinances, the legislature was imposing a restraint upon that particular body politic rather than upon its parent public body. In short, the legislature did not intend to permit a housing authority to proceed in opposition to or without respect for such zoning or building regulations as may be in force within the area of its operation.

On the other hand, by the Housing Cooperation Law, the legislature in turn authorized the parent public body "upon such terms . . . as it may determine," to "Plan or replan, zone or rezone . . . make exceptions from building regulations and ordinances" and to "Do any and all things, necessary or convenient to aid and cooperate in the planning, undertaking, construction or operation of . . .

housing projects" by "resolution of the governing body." And, this power of cooperation was conferred upon the parent public body "in addition and supplemental to the powers conferred by any other law."

Thus, in this latter vein, it would appear reasonable to conclude that the legislature intended that a parent political subdivision, acting through its governing body, could either (a) compel a housing authority to submit its proposals, *e.g.*, off-street parking exemptions, to the appropriate subordinate agency for prefatory action in conformity with existing zoning or building ordinances, or (b) permit the housing authority, in the interests of expeditiously carrying out a state purpose and objective, to by-pass subordinate bodies and obtain dispositive action by the governing body. In either event, the housing authority would be subject to conformity with existing zoning or building regulations, absent appropriate relief therefrom by ultimate action of the governing body of its parent state public body.

In the instant case, the city of Seattle, acting through its council, generally followed course (b). The housing authority was permitted to file its request for relief from prevailing off-street parking requirements with the council. The request was in turn referred to a committee of that governing body, before whom a public hearing was held. Interested parties, includinging appellant, appeared and were allowed to present evidence for and against the request. The committee considered the testimony and evidence and recommended approval, following which the council considered the committee's recommendation, accepted it, and enacted the challenged ordinance. In so doing, we are satisfied the council acted within the limits of its authority under the Housing Cooperation Law.

Finding no merit in the peripheral assignments of error, we affirm the judgment of the trial court.

Finley, C. J., Weaver and Rosellini, JJ., and Barnett, J. Pro Tem., concur.

---

September 12, 1967. Petition for rehearing denied.