[No. 21847-3-III.   Division Three.   March 25, 2004.]

HOUSING AUTHORITY OF THE CITY OF PASCO AND FRANKLIN COUNTY, *Respondent*, v. THE CITY OF PASCO, *Appellant*.

*Matthew J. Segal* (of *Preston Gates & Ellis, L.L.P.*) and *Leland B. Kerr, William J. Schroeder*, and *Laura D. McAloon* (of *Paine, Hamblen, Coffin, Brooke & Miller, L.L.P.*), for appellant.

*Kenneth J. Diamond*, for respondent.

KATO, A.C.J. — In 1981, the City of Pasco (Pasco) and Franklin County formed a Joint Housing Authority (JHA). In 2002, Pasco passed an ordinance dissolving JHA and another ordinance creating a new housing authority. JHA then sought an injunction to restrain Pasco from implementing these ordinances. The court granted a temporary injunction and later determined that the ordinances were invalid on cross motions for summary judgment. We affirm.

Chapter 35.82 RCW authorizes local governments to activate local housing authorities. In 1942, Pasco activated the Pasco Housing Authority. Pasco is also a code city with all its attendant powers under RCW 35A.11.010 and RCW 35A.11.020.

The legislature in 1980 also authorized the formation of joint city/county housing authorities. RCW 35.82.300. In 1981, pursuant to RCW 35.82.300, Pasco and Franklin County formed JHA. The enacting ordinance specified that JHA would operate "until such time as the governing body of either the City of Pasco or Franklin County shall pass an ordinance dissolving the same." Clerk's Papers (CP) at 18. The Pasco Housing Authority merged into JHA at this time.

In 2002, the Pasco City Council passed Resolution No. 2656 establishing a goal of small neighborhood rehabilitation. To achieve this goal, the city manager directed the city planning director to develop a strategy and budget to implement the rehabilitation project. The planning director prepared a report indicating the project was beyond the capabilities of existing city staff. The report noted that the activities involved in the rehabilitation project were traditionally the functions of an urban renewal agency.

The legislature had recently amended Washington's Urban Renewal Act, chapter 35.81 RCW, to allow local governments to designate local housing authorities as Community Renewal Agencies (CRA). JHA had the expertise and staff to fill the role of a CRA. But the planning director did not believe JHA would agree to address this project because the needs were specific to Pasco. The report recommended dissolving JHA and then recreating the original Pasco Housing Authority with an expanded charter to designate it as Pasco's CRA.

On November 18, 2002, the Pasco City Council passed Ordinance No. 3580 in which the city withdrew from, and effectively dissolved, JHA. It also approved Ordinance No. 3581 establishing a new housing authority, the City of Pasco Community Renewal and Housing Authority (CRHA).

JHA considered improper Pasco's unilateral dissolution of the authority. On November 21, JHA sought an order for immediate and preliminary injunctive relief enjoining Ordinance Nos. 3580 and 3581 from taking full force and effect. It also sought a judgment declaring both ordinances null and void.

On November 26, 2002, the court enjoined Pasco from implementing the ordinances. This order was to remain in effect until ruling on pending cross motions for summary judgment. The court thereafter determined the ordinances were unenforceable and granted JHA's motion. Pasco appeals.

■ Municipal ordinances are presumed to be validly enacted. *City of Bothell v. Gutschmidt*, 78 Wn. App. 654, 660, 898 P.2d 864 (1995). The entity challenging the ordinance has the burden to show by clear, cogent, and convincing evidence that the ordinance was not validly enacted. *Id.* Moreover, an ordinance is presumed constitutional; the party asserting otherwise has the burden of proof. *Brown v. City of Yakima*, 116 Wn.2d 556, 559, 807 P.2d 353 (1991). An ordinance is invalid if "(1) a general statute preempts city regulation of the subject or (2) . . . the ordinance directly conflicts with a statute." *Heinsma v. City of Vancouver*, 144 Wn.2d 556, 561, 29 P.3d 709 (2001). A city is preempted from enacting an ordinance if the legislature has stated, either expressly or by implication, its intent to preempt the area. *Id.*

■ The legislature has indicated that municipalities have the power under chapter 35.82 RCW to enact housing authorities, thus expressing that it did not intend to preempt this area. The question is whether the ordinance is in conflict with a statute. An ordinance is invalid because of conflict only if it " 'directly and irreconcilably conflicts with the statute.' " *Heinsma*, 144 Wn.2d at 564 (quoting *Brown*, 116 Wn.2d at 561).

■ Chapter 35.82 RCW permits cities to activate housing authorities. RCW 35.82.010, .030. The purpose of this chapter is to recognize the need to provide sanitary dwelling accommodations for low-income persons and to provide a way to meet that need. *Pierce County Hous. Auth. v. Murrey's Disposal Co.*, 86 Wn. App. 138, 142, 936 P.2d 1 (1996) (citing RCW 35.82.080), *review denied*, 131 Wn.2d 1012 (1997).

■ There is nothing in chapter 35.82 RCW specifically authorizing Pasco to do what it did. On the other hand, RCW 35.82.320 does provide a procedure for deactivating a housing authority:

A housing authority created under this chapter and activated by a resolution by the governing body of a city, town, or

county may be deactivated by a resolution by the city, town, or county. The findings listed in RCW 35.82.030 to activate the housing authority shall be considered prior to deactivating the housing authority.

"Deactivate" means "to make inactive or ineffective." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 579 (1993). A deactivation is not what happened here.

■ Pasco did not determine its residents no longer needed a housing authority; rather, it just decided to create a different one. It did not make its housing authority inactive or ineffective. Pasco simply changed its composition. RCW 35.82.320 provides a procedure for a municipality to eliminate a housing authority when the need for one no longer exists. The statute does not, however, authorize the dissolution of one housing authority in favor of another. Contrary to Pasco's argument, RCW 35.82.320 provides no support for its actions.

■ Chapter 35.82 RCW does not give Pasco the authority to act as it did. The legislature intended to allow municipalities to work together to meet the goals of chapter 35.82 RCW. But it provided no mechanism for one municipality to unilaterally end its relationship with another entity once the joint venture was created under RCW 35.82.300.

■ Pasco next claims that because it is a code city under RCW 35A.11.020, it was entitled to act. Pasco's status as a code city gives it " 'all powers possible for a city or town to have under the Constitution of this state, and not specifically denied to code cities by law.' " *City of Bellevue v. Painter*, 58 Wn. App. 839, 841, 795 P.2d 174 (1990) (quoting RCW 35A.11.020). Title 35A RCW's purpose is to give code cities " 'the broadest powers of local self-government consistent with the Constitution of this state.' " *Id.* (quoting RCW 35A.01.010). A code city may thus act without restriction unless its action is prevented by the constitution, general law, or ordinance. *Shaw Disposal, Inc. v. City of Auburn*, 15 Wn. App. 65, 66, 546 P.2d 1236 (1976). Here,

however, Pasco's actions are prevented by the general law and purpose of chapter 35.82 RCW.

A housing authority is an independent entity and not a department of the city. *Wilcox v. Hous. Auth. of King County*, 66 Wn.2d 864, 870-71, 405 P.2d 723 (1965); *see also Mercy v. City of Seattle*, 71 Wn.2d 556, 561, 429 P.2d 917 (1967). Housing authorities are not meant to be responsive to the popular will or political pressure. *Wilcox*, 66 Wn.2d at 870. Pasco dissolved JHA because the city did not like the direction it was taking. But JHA was an independent entity that Pasco was not entitled to control alone. Pasco's actions were an attempt to control the housing authority—conduct unauthorized by chapter 35.82 RCW.

Permitting Pasco to dissolve JHA on its own is contrary to the legislature's intent and thus contrary to general law. Furthermore, its unilateral actions, if sanctioned, would undermine the ability of housing authorities to act with any sense of certainty as to their continued existence, a situation inconsistent with the mandate that housing authorities act as independent entities. For example, housing authorities are specifically authorized to incur debt. RCW 35.82.070(1)-(3), (5), (18), .130, .200. The debt incurred by a housing authority is an obligation of the authority itself, not the city or county in which it operates. RCW 35.82.070, .130. If a joint housing authority could be dissolved at any time by the sole act of the city or county, the uncertainty would hamper the ability of the authority to obtain funding.

A case that illustrates the problems with allowing a city alone to dissolve a housing authority is *Cuyahoga Metropolitan Housing Authority v. City of Cleveland*, 342 F. Supp. 250 (N.D. Ohio 1972), *aff'd sub nom.* 474 F.2d 1102 (6th Cir. 1973). There, Cleveland entered into a cooperation agreement with Cuyahoga's housing authority to develop housing for low-income individuals in Cleveland. *Id.* at 252. About a year later, Cleveland repealed the ordinance in an attempt to cancel the cooperation agreement. *Id.* at 253. The court did not permit the city to repeal the initial ordinance. *Id.* at 264. In so holding, the court indicated that

the housing authority, relying on the initial ordinance, expended money to create low-income housing for Cleveland. The authority also acquired grants, which it would lose if Cleveland were permitted to repeal the enabling ordinance. *Id.* at 263. Repealing the enabling ordinance would have a ripple effect on all of the housing authority's contractual relationships. *Id.* at 264; *see also City of Paterson v. Hous. Auth. of City of Paterson*, 96 N.J. Super. 394, 233 A.2d 98, 104-05 (1967).

Here, allowing Pasco to dissolve JHA will have an impact on the authority's loans and other contractual obligations. Permitting a city to dissolve a joint housing authority at any time and without any notice could also hamper the authority's ability to enter into contracts or obtain funding. The uncertainty as to a joint housing authority's continued viability would reduce the effectiveness of the authority to carry out its mission. The purpose behind chapter 35.82 RCW is to provide safe, sanitary housing for low-income persons. *See* RCW 35.82.010. If a housing authority cannot obtain funds or enter into contracts to do so, it cannot achieve this purpose. We interpret statutes " 'so as to give effect to the legislative intent as determined within the context of the entire statute.' " *Waterjet Tech., Inc. v. Flow Int'l Corp.*, 140 Wn.2d 313, 322, 996 P.2d 598 (2000), (emphasis omitted) (quoting *State v. Elgin*, 118 Wn.2d 551, 556, 825 P.2d 314 (1992). Permitting Pasco to dissolve JHA is inconsistent with the public policy of chapter 35.82 RCW.

Pasco further claims that RCW 39.34.030(3)(e) authorized it to act in dissolving JHA. Chapter 39.34 RCW, the Interlocal Cooperation Act, permits local governments to cooperate with other local governments. RCW 39.34.010. RCW 39.34.030(3) outlines the procedure for entering into joint ventures. But JHA was not created under RCW 39-.34.030. It was created under RCW 35.82.300. RCW 39-.34.030(3)(e) is inapplicable.

Pasco did not have the specific legislative authority to enact Ordinance Nos. 3580 and 3581. Its actions violate the

general laws regarding housing authorities, chapter 35.82 RCW, as well as the policy behind that law.

Affirmed.

SCHULTHEIS and KURTZ, JJ., concur.