## NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

May 10, 2022

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| VIKING JV, LLC, | No. 55421-6-II |
| Appellant/Cross-Respondent, | |
| v. | |
| CITY OF PUYALLUP, | PUBLISHED OPINION |
| Respondent/Cross-Appellant. | |

GLASGOW, C.J.—Viking JV LLC is constructing an approximately 450,000 square foot commercial warehouse within the City of Puyallup. Viking challenges the park impact fee that the City assessed as a condition of Viking's commercial building permit. Viking argues its warehouse will typically employ between 50 and 60 employees, but it was assessed a disproportionate park impact fee because the fee schedule that the City used assumed approximately 450 employees for a warehouse of this size.

The City argues in its cross appeal that the superior court erred by denying its motion to dismiss Viking's petition for review under the Land Use Petition Act (LUPA), chapter 36.70C RCW, because Viking failed to exhaust its administrative remedies under the City's municipal code. Specifically, after obtaining a decision from the City's hearing examiner, Viking failed to seek review from the City's appellate examiner before proceeding to superior court. Viking responds that the City's two-tiered hearing examiner review process is invalid.

We hold that the City's two-tiered hearing examiner review process is consistent with state law so, to exhaust administrative remedies, Viking needed to seek review by the City's appellate examiner before proceeding to superior court. Accordingly, we reverse the superior court's orders

No. 55421-6-II

denying the City's motions to dismiss and for reconsideration, and we remand for the superior court to dismiss Viking's LUPA petition for lack of standing based on failure to exhaust.

FACTS

I. PARK IMPACT FEES

Municipalities may exact impact fees from new developments "to reimburse local governments for the capital cost of public facilities that are needed to serve new development and the people who occupy or use the new development." Clerk's Papers (CP) at 283; *see also* RCW 82.02.050(1)(b), .090(3). These public facilities may include streets, schools, fire protection facilities, and parks. RCW 82.02.090(7).[1] Impact fees are one-time fees imposed as conditions of building permits. RCW 82.02.090(3); CP at 660.

By ordinance, the City required new manufacturing developments to pay a park impact fee of $0.87 per square foot of development. Puyallup Municipal Code (PMC) 21.20.120(1). It also authorized the City's development services director to impose alternative fees on specific developments based on independent fee calculations "[i]f, in the judgment of the director, none of the fee categories or fee amounts [established by ordinance] accurately describe or capture the impacts of a new development." PMC 21.20.150(1).

II. VIKING'S PROTEST TO THE DIRECTOR

Viking is constructing a commercial warehouse within the City that will be approximately 450,000 square feet. Viking did not elect to have an independent park impact fee calculated based on its individual circumstances so, applying the fee schedule established by City ordinance, the

---

[1] Impact fees do not include system development charges.

No. 55421-6-II

City assessed Viking a $388,725 park impact fee as a condition of its commercial building permit. Viking paid this fee under protest in August 2018. It also submitted a letter protesting the fee to Thomas Utterback, the development services director, pursuant to PMC 21.20.060(2).

According to Viking, the 1,000-square-feet-per-employee assumption that the fee calculation was based on resulted in a disproportionate fee for Viking's "high-cube warehouse." CP at 265. Viking reasoned that because high-cube warehouses are designed to store products for longer periods of time, "the Viking project will result in a very small number of actual employees." *Id.* Viking projected between 18 and 20 full-time employees, so applying the City's square-footage-based formula would result in a park impact fee of approximately $19,500 per employee.[2]

In September 2018, Utterback requested supplemental information to complete his assessment, including Viking's basis for its employee estimates and "specific data-centered information supporting [Viking's] position as to the lack of expected park impacts." CP at 315. He also allowed Viking to propose an alternative park impact fee that it believed would be warranted. Viking did not provide the requested information or propose an alternative fee.

After several months with no further information from Viking, Utterback concluded Viking was not entitled to a reduction of its park impact fee, in part because Viking failed to provide any information to support such a reduction. Utterback concluded that Viking failed to provide sufficient evidence to prevail and that the park impact fee exacted for the Viking project was "appropriate and consistent with applicable statutes." CP at 231 (underscore omitted).

---

[2] Viking later changed its employee estimate to 60 employees.

No. 55421-6-II

### III. VIKING'S APPEAL TO THE HEARING EXAMINER

Viking appealed Utterback's determination to the hearing examiner pursuant to PMC 21.20.060(3). The examiner held a hearing in July 2019 and took evidence, including witness testimony.

After the hearing, the examiner reasoned that although Viking provided employee estimates between 18 and 60 employees, "nothing in the building permit or zoning code would limit [Viking] from converting the warehouse from high-cube to a more traditional design that would involve a significantly higher number of employees" with a corresponding increase on local park impact in the future. CP at 26. Viking had stated it would be unwilling to enter a covenant restricting its number of employees. Additionally, Viking opted not to use the independent fee calculation process available under the municipal code, which would have provided the director and hearing examiner with "valuable information" on the project's "unique circumstances" that could have supported a fee reduction. *Id.* The hearing examiner concluded that Viking failed to carry its burden and provide sufficient evidence to support an adjustment of the impact fee. The hearing examiner denied Viking's appeal.

The hearing examiner's written decision advised, "'The decision of the hearing examiner shall be final, except as provided in PMC 2.54.150 through 2.54.170.'" CP at 23 (quoting PMC 21.20.060(6)). PMC 2.54.150 through .170 provides for additional review by an appellate examiner. Viking did not appeal to the appellate examiner.

### IV. LUPA PETITION

Viking instead filed a LUPA petition in superior court, challenging the hearing examiner's decision. The City filed a motion to dismiss the petition for failure to exhaust administrative

4

No. 55421-6-II

remedies. In response to this motion, Viking argued that LUPA requires exhaustion "only to the extent 'required by law'" and the City's two-tiered examiner review process is contrary to RCW 35A.63.170(2), the statute authorizing local hearing examiners. CP at 42 (referring to RCW 36.70C.060(2)(d), which requires a LUPA petitioner to exhaust administrative remedies "to the extent required by law").

The superior court agreed with Viking and concluded RCW 35A.63.170 applies broadly to land use decisions, the City's hearing examiner system does not fall within one of the three options listed in RCW 35A.63.170(2) and, accordingly, the City's local ordinance directly conflicts with the state statute. It determined Viking did not need to seek review by the appellate examiner before filing its LUPA petition, and it denied the City's motion to dismiss. The City moved for reconsideration, and the superior court denied this motion as well. The superior court then denied Viking's petition on the merits.

Viking appeals the superior court's order denying its LUPA petition. The City cross appeals the superior court's orders denying its motion to dismiss and motion for reconsideration.

ANALYSIS

I. STANDARDS OF REVIEW

LUPA governs judicial review of land use decisions. RCW 36.70C.010, .030(1); *Whatcom County Fire Dist. No. 21 v. Whatcom County*, 171 Wn.2d 421, 426, 256 P.3d 295 (2011). The imposition of an impact fee as a condition of a building permit is a land use decision subject to LUPA. *James v. Kitsap County*, 154 Wn.2d 574, 586, 115 P.3d 286 (2005). If a developer fails to comply with the procedural requirements of LUPA, they are barred from challenging the legality of the impact fees imposed. *Id.* at 589.

No. 55421-6-II

LUPA defines a "'[l]and use decision'" as "a final determination by a local jurisdiction's body *or officer* with the highest level of authority to make the determination, including those with authority to hear appeals." RCW 36.70C.020(2) (emphasis added). To have standing under LUPA, the petitioner must have "exhausted [their] administrative remedies to the extent required by law." RCW 36.70C.060(2)(d); *see also West v. Stahley*, 155 Wn. App. 691, 697, 229 P.3d 943 (2010). Failure to exhaust "is an absolute bar to bringing a LUPA petition." *West*, 155 Wn. App. at 699. We review de novo a superior court's decision resolving a motion to dismiss a LUPA petition based on a failure to exhaust. *Id.* at 695-96.

## II. MOTION TO DISMISS

The City argues the superior court erred when it denied the motion to dismiss and motion for reconsideration because Viking failed to exhaust administrative remedies by seeking appellate examiner review before proceeding to superior court. Because the officer with the highest level of authority to review the park impact fee decision for the City did not review it, the City contends there was no "'[l]and use decision'" under LUPA that conferred jurisdiction to the superior court. Opening Br. of Resp't/Cross Appellant City of Puyallup at 10 (citing RCW 36.70C.020(2)). We agree.

As an initial matter, the City insists that only chapter 36.70B RCW, governing local project review, applies. In contrast, Viking insists that RCW 35A.63.170, the statute authorizing code cities to adopt hearing examiner systems, is the only applicable statute. We disagree with both of these contentions and conclude that both chapter 36.70B RCW and RCW 35A.63.170 apply here.

6

No. 55421-6-II

A.      Applicable Statutes

Under the Washington Constitution, cities may make and enforce regulations so long as they "are not in conflict with general laws." WASH. CONST. art. XI, § 11. Puyallup is a noncharter code city that is governed by the provisions of title 35A RCW. *See* RCW 35A.01.020; PMC 1.08.010. Title 35A RCW's "purpose and policy" is to confer "the broadest powers of local self-government consistent with the Constitution of this state." RCW 35A.01.010.

"All grants of municipal power to municipalities electing to be governed under the provisions of [title 35A RCW], whether the grant is in specific terms or in general terms, shall be liberally construed in favor of the municipality." *Id.* "Any specific enumeration of municipal powers contained in this title or in any other general law shall not be construed in any way to limit the general description of power contained in this title." *Id.*; *see also* RCW 35A.63.160 ("[T]his title shall not limit any code city from exercising its constitutionally granted power to plan for and to make and enforce within its limits all such local police, sanitary, and other regulations in the manner that its charter or ordinances may provide."). "A code city may thus act without restriction unless its action is prevented by the constitution, general law, or ordinance." *Hous. Auth. of Pasco & Franklin County v. City of Pasco*, 120 Wn. App. 839, 844, 86 P.3d 1217 (2004).

1.      Chapter 36.70B RCW local project review

Chapter 36.70B RCW applies to local project permits, which include building permits like the one at issue here. *See* RCW 36.70B.020(4), .030(5). The legislature initially adopted chapter 36.70B RCW in 1995 as part of a comprehensive reform package recommended by a governor's task force. *See* LAWS OF 1995, ch. 347, § 401; S.B. REP. ON ENGROSSED SUBSTITUTE H.B. 1724, at 1, 54th Leg., Reg. Sess. (Wash. 1995). It was adopted shortly after *Maranatha Mining, Inc. v.*

7

No. 55421-6-II

*Pierce County* highlighted some of the challenges of having elected council members make final land use decisions for local government. *See* 59 Wn. App. 795, 798-99, 801 P.2d 985 (1990) (describing a county council meeting and deliberations regarding a permitting decision). The comprehensive reform bill was also adopted because an increasing number of laws and regulations had complicated the process for obtaining land use permits. RCW 36.70B.010. The bill was quite large; it included nine different parts. *See* ENGROSSED SUBSTITUTE H.B. 1724, 54th Leg., Reg. Sess. (Wash. 1995). Chapter 36.70B RCW was adopted under part IV, which addressed local permit processes.

To streamline the process for reviewing local project permits, the legislature mandated that local governments combine review processes and, with limited exception, "provide for no more than one open record hearing and one closed record appeal." RCW 36.70B.050(2). "Each local government shall determine which project permits are subject to an open record hearing and a closed record appeal." RCW 36.70B.120(2).

An "[o]pen record hearing" is "a hearing, conducted by a single hearing body or officer authorized by the local government to conduct such hearings, that creates the local government's record through testimony and submission of evidence and information." RCW 36.70B.020(3). It may be conducted as part of an appeal process if no such hearing was held prior to the government issuing its permitting decision. *Id.*

A "[c]losed record appeal" is "an administrative appeal on the record to a local government body *or officer*, including the legislative body, following an open record hearing on a project permit application." RCW 36.70B.020(1) (emphasis added). The appeal is based on the existing

8

No. 55421-6-II

record "with no or limited new evidence or information allowed to be submitted and only appeal argument allowed." *Id.*

Although chapter 36.70B RCW does not limit decision-makers to hearing officers, it does contemplate that a closed record appeal can be performed by a single officer rather than the city's legislative body. Moreover, RCW 82.02.070(5), the statute that requires each city that imposes impact fees to provide an administrative appeals process for the fees, states that "the process may follow the appeal process for the underlying development approval or the county, city, or town may establish a separate appeals process."

2. Title 35A RCW and RCW 35A.63.170 addressing code city hearing examiners

Because Puyallup is a code city, the requirements of title 35A RCW also apply here. Under part IV of the 1995 comprehensive land use reform bill, the part that addressed local permit processes, the legislature also amended RCW 35A.63.170. *See* LAWS OF 1995, ch. 347, § 424. RCW 35A.63.170 was amended alongside the adoption of chapter 36.70B RCW without any express statement from the legislature that one superseded the other.

One of the 1995 amendments to RCW 35A.63.170 expanded the authority of local legislative bodies to "vest in a hearing examiner the power to hear and decide those issues [the local legislative body] believes should be reviewed and decided by a hearing examiner" to broadly include "[a]ppeals of administrative decisions or determinations." RCW 35A.63.170(1)(b); *see also* LAWS OF 1995, ch. 347, § 424. This authority is "[i]n addition" to the municipality's statutory

9

No. 55421-6-II

authority to adopt a hearing examiner system to address zoning ordinance amendments. RCW 35A.63.170(1).[3]

If the municipality vests power in a hearing examiner, "[t]he legislative body shall prescribe procedures to be followed by a hearing examiner." *Id.* Additionally, the legislative body "shall by ordinance specify the legal effect of the decisions made by the examiner." RCW 35A.63.170(2). The legal effect of the hearing examiner's decisions

> shall include one of the following:
> (a) The decision may be given the effect of a recommendation to the legislative body;
> (b) The decision may be given the effect of an administrative decision appealable within a specified time limit to the legislative body; or
> (c) Except in the case of a rezone, the decision may be given the effect of a final decision of the legislative body.

RCW 35A.63.170(2)(a)-(c).

3. <u>Harmonizing chapter 36.70B RCW with RCW 35A.63.170</u>

Viking argues that because RCW 35A.63.170 specifically addresses hearing examiners, it controls in favor of the more general provisions in chapter 36.70B RCW. We disagree.

Whenever possible, we read statutes together "'to achieve a harmonious total statutory scheme . . . which maintains the integrity of the respective statutes.'" *State v. Derenoff*, 182 Wn. App. 458, 464, 332 P.3d 1001 (2014) (alteration in original) (internal quotation marks omitted) (quoting *State ex rel. Peninsula Neigh. Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000)). Accordingly, if possible, we must read these two statutes in harmony. The legislative

---

[3] The legislature also conferred on the city's legislative body the power to "adopt a hearing examiner system under which a hearing examiner or hearing examiners may hear and decide applications for amending the zoning ordinance when the amendment which is applied for is not of general applicability." RCW 35A.63.170(1). This provision applies only to zoning decisions.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55421-6-II

history also supports doing so. Because the legislature amended the hearing officer provisions in RCW 35A.63.170 and adopted chapter 36.70B RCW at the same time and in the same part of a broader reform bill, without saying that one statute superseded the other, it is likely that the legislature intended these statutes to work together.

In addition, we must read all sections of title 35A RCW to confer "the broadest powers of local self-government consistent with the Constitution of this state." RCW 35A.01.010. "Any specific enumeration of municipal powers contained in this title or in any other general law shall not be construed in any way to limit the general description of power contained in this title." *Id.* "All grants of municipal power . . . under the provisions of this title, *whether the grant is in specific terms or in general terms*, shall be liberally construed in favor of the municipality." *Id.* (emphasis added). These interpretive provisions governing title 35A RCW defeat Viking's argument that RCW 35A.63.170 must prevail over chapter 36.70B RCW because it is the statute that more specifically applies to hearing examiners.

RCW 35A.63.170 broadly confers power on a code city's legislative body to adopt a hearing examiner system and to prescribe relevant procedures. And chapter 36.70B RCW expressly allows for local project permit reviews to involve a two-tiered approach of an initial and then an appeal decision, each by an individual officer, so long as the second tier involves a closed record review.

One way to read RCW 35A.63.170 and chapter 36.70B RCW together is to conclude that local governments may establish a project permit review process that involves both an open record hearing and a closed record appeal, each to be decided by a hearing examiner. *See* RCW 36.70B.050(2) (allowing local governments to "provide for no more than one open record hearing

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55421-6-II

and one closed record appeal"). If a code city elects to delegate its final, second-tier review process to a hearing examiner, then the local government must designate the legal effect of the final hearing examiner decision, as prescribed by RCW 35A.63.170(2). In other words, "the decisions made by the examiner" under RCW 35A.63.170(2) are the final hearing examiner decisions under the local government's review process, but the city has flexibility to create a two-tiered internal hearing examiner review process leading up to the final appellate examiner decision.

To be sure, there are other ways to reconcile these statutes. For example, we could conclude that only one hearing examiner decision can occur under RCW 35A.63.170, so if a code city opts for its closed record review of a permitting decision to be performed by a hearing examiner, then some other officer must perform the lower-tier, open record review. Or we could conclude that if a code city opts to have its hearing examiner's decision have "the effect of a final decision of the legislative body" under RCW 35A.63.170(2)(c), rather than a recommendation to, or a decision subject to the review of, the legislative body under (2)(a) or (2)(b), then the city must also opt *not* to have a second-tier, closed record review under chapter 36.70B RCW.

But neither of these alternative options accounts for the liberal construction requirement in RCW 35A.01.010 and the clear requirement in RCW 35A.63.160 that "this title shall not limit any code city from exercising its constitutionally granted power to plan for and to make and enforce within its limits all such local police, sanitary, and other regulations in the manner that its charter or ordinances may provide." The first option, reading RCW 35A.63.170(2) to restrict only the final hearing officer decision resulting from a code city's process, satisfies these interpretive requirements *and* maximizes code cities' authority to construct their own internal review process for land use permitting decisions as RCW 35A.01.010 requires, so long as they comply with

12

No. 55421-6-II

chapter 36.70B RCW. Additionally, our interpretation allows nonelected officers with specialized expertise to make the local government's land use decisions at both levels, so local governments can, if they choose, avoid complications that may arise from a system that puts final decision-making authority with the local legislative body.

B.      Preemption

Viking asserts that the City's ordinance permits two-tiered hearing examiner review, which RCW 35A.63.170(2) prohibits. In other words, Viking argues that RCW 35A.63.170(2) preempts by direct conflict the City's two-tiered hearing examiner review ordinance. Because the ordinance does not conflict with RCW 35A.63.170(2), we disagree.

1.      The City's hearing officer review process is not preempted

We presume municipal ordinances are valid. *State v. Kirwin*, 165 Wn.2d 818, 825, 203 P.3d 1044 (2009). An ordinance is invalid only if it "directly conflicts with a state statute" or if the state legislature has preempted the field of regulation. *Id.* "A local regulation conflicts with state law where it permits what state law forbids or forbids what state law permits." *Id.* There is a conflict if the two provisions "cannot coexist." *Id.* at 826. But like two statutes, "if the statute and ordinance may be read in harmony, no conflict will be found." *Watson v. City of Seattle*, 189 Wn.2d 149, 171, 401 P.3d 1 (2017).

The City's municipal code specifically provides for appeals of impact fees. *See* PMC 21.20.060. It provides that fee payers may pay the assessed fees under protest and file a request for review with the development services director. PMC 21.20.060(1), (2). The director's decision "can be appealed to the hearing examiner as per Chapter 2.54 PMC." PMC 21.20.060(3). Chapter 2.54 PMC provides for an open record hearing, a written decision by the hearing examiner that

13

No. 55421-6-II

includes findings and conclusions based on the record established at the hearing, and a closed record review of the hearing examiner's decision by the appellate examiner. PMC 2.54.100, .110(1), .150, .170. "The decision of the hearing examiner shall be final, except as provided in PMC 2.54.150 through 2.54.170." PMC 21.20.060(6).

PMC 2.54.150 allows a party who feels that the hearing examiner's decision "contains substantial error, was materially affected by irregularities in procedure, is unsupported by substantial evidence in the record or is in conflict with the city's adopted plans, policies and ordinances" to request review by the appellate examiner. "The decision of the appellate examiner shall be final unless within 21 days of the decision of the appellate examiner a valid land use petition is filed with the Superior Court of Washington for Pierce County." PMC 2.54.170.

Consistent with RCW 36.70B.050(2), the City's code allows for no more than one open record hearing and one closed record appeal. *See* PMC 2.54.100, .150, .170. And consistent with RCW 35A.63.170(2)(c), the City has designated that each examiner's decision "may be given the effect of a final decision of the legislative body." The original hearing examiner's decision "shall be final *subject to options for review and appeal available under PMC 2.54.150.*" PMC 2.54.110(3) (emphasis added). And the appellate examiner's decision "shall be final *unless within 21 days of the decision of the appellate examiner a valid land use petition is filed*" in superior court. PMC 2.54.170 (emphasis added).

Viking insists that the City's system falls outside of the three options provided by RCW 35A.63.170(2) and constitutes an unauthorized "fourth option" because it requires "a second hearing examiner process." Viking JV LLC's Resp. to City of Puyallup's Cross Appeal and Reply Br. at 5. But under the City's municipal code, there is no opportunity to appeal from either

14

No. 55421-6-II

examiner decision to a legislative body, and neither decision is a recommendation to the legislative body. The initial hearing examiner's decision may become the City's final administrative decision if not internally appealed, and the appellate examiner's decision, if sought, is the final land use decision that may only be reviewed by the superior court under LUPA. Although the City's system has two tiers of review by the hearing examiner's office, it still complies with RCW 35A.63.170(2) by adopting the option that allows a city to give a hearing examiner's decision the effect of a final decision by the city. *See* RCW 35A.63.170(2)(c).

Moreover, nothing in RCW 35A.63.170(2) expressly prohibits a two-tiered internal review system. Nor would implying such a restriction be consistent with our obligation to presume the validity of ordinances and to interpret provisions in chapter 35A.63 RCW liberally in favor of the municipality's self-governance. The City's two-tiered system is consistent with both relevant authorizing statutes; it does not permit something that state law prohibits.

2.      Case law does not require a different result

To support its argument, Viking cites to *Department of Corrections v. City of Kennewick*, 86 Wn. App. 521, 937 P.2d 1119 (1997), and *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 829 P.2d 217 (1992). But neither of these cases dictates a different outcome. *Kennewick* briefly discussed former RCW 35A.63.170 (1977). 86 Wn. App. at 530. The issue in *Kennewick* was limited, however, to "whose findings the court reviews for substantial evidence" where Kennewick provided for a decision by a planning director that could be appealed to a planning commission and appealed again to the city council. *Id.* at 529. There was no challenge to the structure of Kennewick's system of review. And the review process at issue in *Kennewick* occurred in 1993, before chapter 36.70B RCW was adopted in 1995. *See id.* at 524.

15

No. 55421-6-II

*Lige* also applied laws in effect before the legislature's adoption of comprehensive reform in 1995, specifically former RCW 36.70.970 (1977). 65 Wn. App. at 619. Moreover, *Lige* interpreted former RCW 36.70.970 to require the *legislative body* to decide between original and appellate jurisdiction when defining its *own* power. *See id.* It never contemplated whether two hearing examiners could have original and appellate jurisdiction.

Under the modern statutory scheme, the closed record appeal may be performed by "a local government body *or officer*" and the open record hearing may be conducted by "a single hearing body *or officer* authorized by the local government." RCW 36.70B.020(1), (3) (emphasis added). There is no statutory limitation on how these governmental bodies are structured or how these hearing officers are related. This is consistent with the broad powers and flexibility that title 35A RCW intended to provide to municipalities structuring their regulatory systems, *see* RCW 35A.01.010, as well as the license given to cities to construct their own appeal processes for impact fees under RCW 82.02.070(5). And as discussed above, the 1995 reform bill was intended to allow local legislative bodies to delegate their land use decision-making authority.

In sum, we hold the City's two-tiered hearing examiner system is consistent with both RCW 35A.63.170 and 36.70B.050(2), it is not preempted, and the cases that Viking relies on do not require a different result.

C.      Exhaustion

"Exhausting administrative remedies is *always* a condition precedent to challenging a 'land use decision' that is subject to review under LUPA." *West*, 155 Wn. App. at 697; *see also* RCW 36.70C.060(2)(d). "Standing requires a party to exhaust administrative review where it exists." *Ferguson v. City of Dayton*, 168 Wn. App. 591, 597 n.4, 277 P.3d 705 (2012). And "where the

16

No. 55421-6-II

permitting authority creates an administrative review process, a building permit does not become 'final' for purposes of LUPA until administrative review concludes." *Durland v. San Juan County*, 182 Wn.2d 55, 64-65, 340 P.3d 191 (2014).

When a superior court acts in its appellate capacity, its jurisdiction is limited to that conferred by statute. *Conom v. Snohomish County*, 155 Wn.2d 154, 157, 118 P.3d 344 (2005). Where there is no final "land use decision" as defined by LUPA, the superior court's appellate jurisdiction has not been properly invoked, and the court "must enter an order of dismissal." *Id.*; *see also Durland*, 182 Wn.2d at 65 (affirming superior court's dismissal of LUPA petition where the petitioner "failed to obtain a land use decision under LUPA" by appealing to the county's hearing examiner). We review a superior court's decision on a motion to dismiss for failure to exhaust de novo. *West*, 155 Wn. App. at 695-96.

To determine whether a party has exhausted administrative remedies for purposes of LUPA, we look to the details of the local government's municipal code. *See, e.g.*, *id.* at 697 (concluding West failed to exhaust administrative remedies because he failed to appeal to the hearing examiner within 14 days as required by the Olympia Municipal Code); *Asche v. Bloomquist*, 132 Wn. App. 784, 792, 133 P.3d 475 (2006) (looking to the Kitsap County Code to determine whether an administrative appeals process existed that the parties needed to exhaust).

Here, the City's code provides for a closed record review of the hearing examiner's impact fee decision by an appellate examiner. PMC 2.54.150, .170, 21.20.060(6). It is undisputed that Viking failed to timely submit an appeal to the appellate examiner.

Because we hold that the City's appellate examiner review process is lawful, Viking failed to exhaust its administrative remedies, and it lacked standing to bring this LUPA petition in

17

No. 55421-6-II

superior court. RCW 36.70C.060(2)(d); *West*, 155 Wn. App. at 697. Viking failed to procure "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals," so there is also no "[l]and use decision" under LUPA that would permit judicial review of Viking's claims. RCW 36.70C.020(2); *Durland*, 182 Wn.2d at 64. There are no equitable exceptions to LUPA's exhaustion requirement. *Durland*, 182 Wn.2d at 66.

This conclusion necessitates dismissal of Viking's petition. We therefore hold the superior court erred as a matter of law when it denied the City's motion to dismiss and motion for reconsideration, and we remand for the superior court to dismiss Viking's petition because jurisdiction was not properly invoked. We cannot consider the merits of Viking's claims.

CONCLUSION

We hold that the City's two-tiered hearing examiner system is consistent with state law. We therefore reverse the superior court's orders denying dismissal, and we remand for the superior court to dismiss Viking's LUPA petition for failure to exhaust.

Glasgow, C.J.

We concur:

Worswick, J.

Price, J.

18